In the Matter of: Primo's Bar, Inc., Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant.

Argued October 4, 1979, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*J. Leonard Langan,* Assistant Attorney General, with him *Kenneth W. Makowski,* Acting Chief Counsel, *Edward Biester, Jr.,* Attorney General, for appellant.

*Michael D. Fioretti,* with him *A. Charles Peruto, Peruto, Ryan and Vitullo,* for appellee.

OPINION BY JUDGE CRAIG, December 28, 1979:

The third degree murder conviction of Alberto Santa, formerly the sole shareholder of Primo's Bar, Inc. (the corporation) spawned the case now before us on appeal.

The Pennsylvania Liquor Control Board (PLCB) asks us to reverse the court below, which reversed the board's revocation of the liquor license held by the corporate entity.

After the murder conviction of Santa on October 19, 1977, the PLCB "pierced the corporate veil"—finding Santa to have been the sole shareholder, president, secretary, treasurer, manager, and one of three members on the board of directors—and revoked the corporation's license on that basis, pursuant to a hearing in December of 1977.

Well before the homicide occurred, however, Financing by Superior, Inc. (Superior), owned by Jack Kulla, had loaned Santa the money to acquire the bar, including its liquor license, and had entered into an agreement with Santa and the corporation to secure that loan. Pursuant to that agreement, Kulla and his wife held the other two directorships, Superior thereby retaining ultimate potential control of the corporation, which right it could exercise in the event of Santa's default on loan repayments.

To further secure its financial interest, Superior had required that all the shares of stock in Santa's

name be endorsed in blank and held by Superior,[1] and thereby retained powers to transfer those shares to itself or anyone else, upon any default by Santa.

The corporation was further prohibited from in any way encumbering or transferring its license or its shares of stock, and Superior retained possession of all the corporation's indicia of its separate legal identity (charter, seal, minute book, stock book and lease). Superior also required the corporation to notify it within 48 hours should the PLCB issue a citation against the premises.[2]

Spurred by 26 consecutive weekly defaults by Santa, Superior, learning of Santa's conviction and the pending PLCB action, promptly called a board of directors meeting. At that meeting, held on February 22, 1978, it ousted Santa from the corporation, assigned all his shares to Kulla, and elected Kulla and his wife to all the corporate offices. From that point on, neither Santa nor any member of his family retained any official connection with Primo's Bar, Inc.

The PLCB officially revoked the license on March 6, 1978. On March 13, 1978, Superior filed the appro-

---

[1] The record is clear on this point and the lower court's finding is in accord.

[2] The court below found that the PLCB had knowledge of the financial structure of the corporate licensee here because, pursuant to the application for the license in 1976, when Santa purchased Primo's, Superior sent the PLCB a copy of the loan agreement.

In addition, Superior also filed a document with the PLCB which requested its notification should any problem with the licensed premises or Santa develop.

The PLCB had, after conducting its investigation of Santa's conviction, sent notices of the citation and the revocation hearing to the corporate address, where those notices were received by members of Santa's family, who spoke no English.

As a result, the PLCB conducted the revocation hearing without the presence of any representative of the corporation.

priate notices with the PLCB indicating that Santa was no longer with the corporation.[3]

Section 471 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §4-471, allows the PLCB to revoke a liquor license under catch-all "other sufficient cause" language. Violations of the criminal laws of the Commonwealth, as distinguished from violations of the Liquor Code itself, can constitute sufficient cause for revocation. *Quaker City Development Co. Appeal*, 27 Pa. Commonwealth Ct. 13, 365 A.2d 683 (1976); *Commonwealth v. Lyons*, 142 Pa. Superior Ct. 54, 15 A.2d 851 (1940).

Upon appeal to the court of common pleas, the court must make findings on the material issues, different from those found by the PLCB, if the court is to change or modify a penalty. *Carver House, Inc. Liquor License Case*, 454 Pa. 38, 310 A.2d 81 (1973). Here, the court below had the benefit of the testimony of Jack Kulla and made findings as to his interest in, and innocence of, the relevant affairs of Santa and the corporation. Therefore the court had statutory authority to reverse the PLCB.

The issue here is whether the PLCB was warranted in disregarding the corporate entity, Primo's Bar, Inc., by revoking its license because of the criminal conviction of its sole shareholder, president, treasurer, secretary and manager.

Resolution of that issue depends upon whether the lender-shareholders here are to be afforded the status of "innocent parties" as to the corporation under *Price Bar, Inc. Liquor License Case*, 203 Pa. Superior Ct. 481, 201 A.2d 221 (1964), in order to preclude desiccation of the corporate vitality.

---

[3] The corporation, through Kulla, has now entered into an agreement of sale with prospective purchasers but the transaction cannot be culminated because the corporation's liquor license, a substantial asset, remains under threat of revocation.

In *Price Bar, Inc. Liquor License Case,* the court reversed a PLCB revocation against a corporate licensee where a 50% stockholder had been convicted of a crime, in no way connected with the licensed business, not violative of the Liquor Code, and not committed on the licensed premises.

The court there refused to pierce the corporate veil, stating that:

[W]e have not done so [pierced the corporate veil] where the rights of innocent parties are involved and the corporation is used for a legal purpose, as otherwise the entire theory of the corporate entity would be made useless.

203 Pa. Superior Ct. at 484, 201 A.2d at 222.

The court went on to say:

If Oxman, [the innocent shareholder] as an innocent investor and stockholder of this corporation, is to be penalized for Daly's [the convicted shareholder] criminal trouble it logically follows that the same reasoning can be applied to a much larger corporate licensee whose stock is largely distributed and extremely valuable. This would indeed make the whole idea of a corporate entity useless.

203 Pa. Superior Ct. at 485, 201 A.2d at 223.

What is it, if anything, about the interest of Superior in Primo's Bar, Inc. that would place Superior's shareholders in a status like that of the 50% shareholder in *Price's Bar?*

The PLCB argues that we must focus on the interest held by Superior at the time of the occurrence of the act that ordinarily would have constituted the "sufficient cause" for revocation—Santa's conviction —and ignore the subsequent takeover of the corporation by the lender.

We agree that such should be the primary focus. However, to render a decision in this difficult case,

we must remain mindful of the underlying purpose of the PLCB's power to revoke a liquor license for the unrelated crime of its holder. Speaking of the words "other sufficient cause" in the relevant statute, our Superior Court has stated their purpose as follows:

> They signify that the legislature intended to give to the board a certain supervisory power over the conduct of a licensee after a license has been granted. In the granting of a license the good repute of the applicant is an important factor for consideration but after a license has been granted and the licensee has been convicted of a crime of such a serious character as to carry with it a prison sentence, then the board is acting within its legal authority in concluding that he is not a fit person to hold a license and that sufficient cause has been shown to revoke it.

*Commonwealth v. Lyons,* 142 Pa. Superior Ct. at 57-8, 15 A.2d at 852.

Regarding this rationale as applied to a corporate licensee, the court in *Price's Bar stated:*

> The Liquor Control Board can insist and public policy and justice demands that corporate officers, managers, etc., withdraw from any active participation in the licensed business where it is felt their influence is contrary to the dictates of the law or the board's regulations or the reputation of the corporation is prejudiced, but where innocent parties are involved a revocation is not warranted.

203 Pa. Superior Ct. at 486, 201 A.2d at 223.

We cannot ignore the fact the sole reason for revocation ceased to exist when Superior ousted Santa from the corporation on February 22, 1978. There is no allegation that Santa or any of his family members continue to be associated with the operation of the cor-

poration nor is there any issue raised of bad repute because of conduct occurring on the premises.

We must view Superior's status at the time of Santa's conviction in light of the fact that it exercised its powers (albeit in its own financial interests) to rid the corporation of the person whose unfitness of reputation caused the PLCB action. At the time of that conviction, Superior was in control of the board of directors, being pledgee of all the stock of the corporation and having a retained power to assume control of the corporation upon the default contingency.

Until Santa might repay his loan, Superior had a financial interest in the corporation, in the form of a security device, comparable to the interest of the 50% shareholder in *Price's Bar*. The PLCB was on notice of the existence of the innocent lender to the corporation because the loan agreement was in the PLCB's files.

Consequently, we hold that Price's Bar governs. The corporate entity in this situation should remain a discrete legal entity; we will not look behind its facade where to do so would visit an inequity upon the innocent pledgee of the stock of this corporation. We cannot find a revocation warranted where to do so would nearly destroy the security interest in a lender, who is now in control of the corporation, for a corporate officer's conduct unconnected to either the Liquor Code or conduct on the premises.

Our holding is not inconsistent with *Kerchner, Sr's Estate v. Liquor Control Board,* 4 Pa. Commonwealth Ct. 247, 285 A.2d 891 (1971), which illustrates the distinguishable situation. In *Kerchner* we held that the PLCB could properly take action against co-licensees who were in a partnership, upon notice to one of the partners only, where one partner had directly violated the Liquor Code. That decision is in accord with the general rule that one partner can be responsible for

the actions of his other partners, and that the holder of the license is responsible for acts of its servants, agents or employees who violate the Liquor Code. *See, R.G.R. Enterprises, Inc., Appeal*, 30 Pa. Commonwealth Ct. 607, 374 A.2d 998 (1977).

We affirm the court below.

ORDER

AND Now, this 28th day of December, 1979, the order of the Court of Common Pleas of Philadelphia County at No. 224 March Term, 1978, dated August 7, 1978 sustaining the appeal of Primo's Bar, Inc. is hereby affirmed.