Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant *v.* Gary L. & Vicky L. Pollock et al., Appellees.

Gary L. & Vicky L. Pollock et al., Appellants *v.* Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellee.

Argued September 12, 1984, before Judges WILLIAMS, JR., CRAIG and DOYLE, sitting as a panel of three.

[redacted]

*Eileen S. Maunus*, Assistant Counsel, with her, *Gary F. DiVito*, Chief Counsel, for appellant/appellee, Pennsylvania Liquor Control Board.

*Lester H. Zimmerman, Jr., Barron & Zimmerman*, for appellee/appellant, Gary L. & Vicky L. Pollock, et al.

OPINION BY JUDGE DOYLE, November 21, 1984:

Before us are the cross-appeals of the Pennsylvania Liquor Control Board (Board) and two liquor licensees from a decision of the Mifflin County Court of Common Pleas which modified the Board's revocation of the two liquor licenses.

The licenses in question are held by two partnerships. One partnership owns and operates the Bel-Vue Inn, the other owns and operates the Windcrest Saloon, both in Brown Township Mifflin County.[1] On December 1, 1982, Thomas Pollock, a partner in both partnerships, pled guilty to federal drug charges[2]

---

1 The partnership of Gary L. and Vicky L. Pollock, Thomas C. and Josephine J. Pollock own the restaurant liquor license for the Bel-Vue Inn; the partnership of Gary L. and Vicky L. Pollock, Thomas C. and Joseph J. Pollock, Eugene and Natalie R. Bryant own the restaurant liquor license for the Windcrest Saloon.

2 The charges were conspiracy to manufacture, distribute and possess with intent to distribute a schedule II substance, viz., methamphetamine.

and was sentenced to pay a fine of $3,500.00 and placed on three year's probation. On the basis of this guilty plea, the Board revoked the licenses held by both partnerships pursuant to Section 471 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §4-471. The licensees appealed to the Court of Common Pleas, and, after a hearing de novo, the Court modified the Board's revocation by revoking the licenses with respect to Thomas Pollock alone, but restoring the licenses with respect to all other partners.

In its appeal to this Court, the Board contends that the trial court erred in revoking the liquor licenses with respect to only one co-licensee, Thomas Pollock, arguing that the partnerships should be held liable for the wrongful acts of one of their partners.[3]

On this issue, we note that the Board's authority to revoke liquor licenses is found in Section 471 of the Liquor Code which states, in pertinent part:

Upon learning of any violation of this act or any law of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws, . . . or upon any other sufficient cause shown, the board may . . . cite such licensee to appear before it or its examiner . . . to show cause why such license should not be suspended or revoked. . . .

The Board contends that it has the authority under this Section to revoke a license of a partnership

---

[3] Our scope of review in a liquor license case where the court of common pleas has conducted a hearing de novo is limited to a determination of whether the order appealed from was supported by sufficient evidence in the record and whether the court committed an error of law or abused its discretion. *Bob Humphreys, Inc. Liquor License Case,* 73 Pa. Commonwealth Ct. 198, 457 A.2d 1035 (1983).

for the violation of one of its partners on the basis of *Kerchner, Sr.'s Estate v. Liquor Control Board*, 4 Pa. Commonwealth Ct. 247, 285 A.2d 891 (1971). In *Kerchner*, we upheld the revocation of a license based on a partner's violation of the Liquor Code in purchasing liquor outside of the state. In that case we stated that "[a] direct violation of the Liquor Code committed by one co-licensee is a proper basis for action against a license held by partners." *Id.* at 250, 285 A.2d at 893.

In the case *sub judice*, however, it is agreed that there has been no violation of the Liquor Code, or of any other laws relating to liquor. Nor did the offending conduct of Thomas Pollock take place on the licensee's premises. Rather the Board's action was based on the language in Section 471 which allows revocation "upon any other sufficient cause shown." While this is a case of first impression applying this phrase to a license held by a partnership, the trial court relied upon the decisions of *Price Bar, Inc. Liquor License Case*, 203 Pa. Superior Ct. 481, 201 A.2d 221 (1964) and *Primo's Bar, Inc. Liquor License Case*, 48 Pa. Commonwealth Ct. 188, 409 A.2d 1369 (1979), which held that the Board lacked "sufficient cause" to revoke a license issued to a *corporation* on the basis of a non-liquor related criminal act of a single shareholder.

While providing some limited guidance, these cases are distinguishable, however, since both were based on the courts' reluctance to disregard the corporate entity and "pierce the corporate veil" when innocent parties would be prejudiced thereby. *Primo's Bar*, 48 Pa. Commonwealth Ct. at 194, 409 A.2d at 1373; *Price Bar*, 203 Pa. Superior Ct. at 485, 201 A.2d at 222. Considerations attendant to the equitable doctrine of piercing the corporate veil have no applicability to the

law of partnerships involved in the case *sub judice.* Indeed, the court in *Primo's Bar* recognized this fact when it reconciled its holding with the holding in *Kerchner* by stating:

> That decision [Kerchner] is in accord with the general rule that one partner can be responsible for the actions of his other partners. . . .

48 Pa. Commonwealth Ct. at 194-95, 409 A.2d at 1373.

The issue then is squarely presented: may a partnership license be revoked on the basis of violations of law by one partner, where the violations do not in any way concern the law related to liquor, alcohol or malt or brewed beverages?

The extent of liability of a partnership generally is set forth in Section 325 of the Uniform Partnership Act, 59 Pa. C. S. §325, which states:

> Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his co-partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

From this Section it is clear that a partnership may incur a penalty because of the wrongful act of a partner, but only when the partner is acting in the ordinary course of the business of the partnership, or with the authority of his co-partners.[4] With respect to these factual issues, the trial court found the following:

---

[4] Section 311 of the Uniform Partnership Act, 59 Pa. C. S. §311 defines as partnership as follows:

> (a) General rule—A partnership is an association of two or more persons to carry on as co-owners a business for profit.

7. The criminal activities of Thomas Pollock did not take place on either of the licensed premises.

8. The criminal activities of Thomas Pollock were not violations of the Liquor Code, nor were the activities in any way related to the business operations of the licensed properties.

9. The Appellants, Gary L. Pollock, Vicky J. Pollock and Josephine J. Pollock and Eugene & Natalie Bryant, had no prior knowledge of the criminal activities of Thomas Pollock.

On the basis of these findings the trial court was correct in concluding that the revocations of the licenses held by the partnerships, qua partnerships, were not warranted. Thomas Pollock's criminal activity was in no way connected with either partnership. It was committed away from the licensed establishments, without the knowledge of other partners, and, unlike *Kerchner,* did not involve a Liquor Code violation. For these reasons, Thomas Pollock's activity cannot be a basis upon which to penalize the partnerships. We therefore hold as a matter of law, that when violations of the Liquor Code and its related and attendant laws and regulations are not the subject conduct under review, absent conspiratorial conduct between or among the parties, one partner's conduct cannot be imputed to the other partners to provide sufficient cause to support the revocation or suspension of the license owned by the partnership.

Having concluded that the trial court was correct in finding that a revocation of the *partnerships'* license was unwarranted, we must next address the issue of that court's modification of the Board's penalty by imposing a revocation of the "license as to Appellant Thomas L. Pollock." The Board argues that the court was without authority to revoke the licenses with respect to one co-licensee alone. We agree.

The Board, by advancing his argument of course is urging us to reverse the order of the Court of Common Pleas and to reinstate their own order which revoked the license of the *partnership*. Having concluded that this may not be done under the factual context in this case, however, the Board's advocacy none-the-less is well taken even though it will have an effect directly contrary to that result espoused by the Board.[5]

Section 471 of the Liquor Code, 47 P.S. §4-471, states that the court of common pleas "shall, in the exercise of its discretion, sustain, reject, alter or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court." In addition, we have held that the court may not change a penalty of the Board unless it has made significant and materially different findings from the Board. *Pennsylvania Liquor Control Board v. Johnstown Turn-Verein,* 71 Pa. Commonwealth Ct. 451, 454 A.2d 1195 (1983). Here, there is no question that the court's additional findings, quoted above, constitute significant and materially different findings in that they establish that the criminal activity was not related to the partnerships and did not involve a Liquor Code violation. We cannot conclude, however, that the court may properly impose a penalty of revocation against only one partner. The liquor licenses in question were issued to the *partnerships,* not to each partner individually. The court could not, therefore, revoke the license with respect to Thomas Pollock because he never held a license separate and distinct from the licenses

---

[5] On page 13 of the Board's brief, the Board places the argument succinctly:

In the instant case, the Lower Court went beyond these bounds [Section 471 of the Code] by creating a new penalty, *i.e.,* partial revocation.

held by the partnerships. While the court's power to alter the penalties of the Board are broad, *Samjess Bar Corp. Liquor License Case,* 84 Pa. Commonwealth Ct. 391, 479 A.2d 86 (1984), the court must exercise its power with regard to existing facts, and cannot revoke a license which is not properly in existence.

The court's order revoking the partnerships' licenses with respect to Thomas Pollock alone must be seen as an attempt to remove Thomas Pollock from the partnerships, and transfer the licenses to the new resulting partnerships. Such a transfer was in fact requested by the partnerships in this case prior to the hearings on revocation, but the record indicates that the request was never acted upon by the Board. While we recognize that transfers of this type may be permitted, and, in certain instances, required by the Board,[6] Sections 464 and 468 of the Liquor Code[7] establish a separate procedure for requesting, and for appealing a denial of a transfer. The licensee's attempted transfer was therefore not an issue properly before the court of common pleas on an appeal from a license revocation. Accordingly, we cannot approve of the court's modification of penalty which effectively transferred the licenses to new partnerships.

Because the court's findings support the conclusion that there was insufficient cause to revoke the part-

---

[6] *See Price Bar,* 203 Pa. Superior Ct. at 486, 201 A.2d at 223, wherein the Superior Court stated:

The Liquor Control Board can insist and public policy and justice demands that corporate officers, managers, etc., withdraw from any active participation in the licensed business where it is felt their influence is contrary to the dictates of the law or the board's regulations or the reputation of the corporation is prejudiced, but where innocent parties are involved a revocation is not warranted.

[7] 47 P.S. §§4-464, 4-468.

176

nerships' licenses, we must reverse the court's order in part, and order the reinstatement of the licenses with respect to *all* partners, including Thomas Pollock.[8]

ORDER

Now, November 21, 1984, the Order of the Court of Common Pleas of Mifflin County in the above referenced matter, dated September 26, 1983, is reversed inasmuch as it affirms the Board's revocation of liquor licenses as to Thomas Pollock alone. The licenses subject to that Order are hereby reinstated with respect to all partners, including Thomas Pollock.

---

[8] Because of our disposition of this matter we need not address the argument raised in the licensees' appeal that the official document of Thomas Pollock's guilty plea was not properly certified under Section 5328(a) of the Uniform Interstate and International Procedure Act, 42 Pa. C. S. §5328(a).