544 A.2d 931

**PENNSYLVANIA LIQUOR CONTROL BOARD, Appellee,**

v.

**TLK, INC., t/a Peter P's, Appellant.**

Supreme Court of Pennsylvania.

Argued May 11, 1988.

Decided July 27, 1988.

Reargument Denied Sept. 27, 1988.

James G. Morgan, Jr., Harrisburg, for appellant.

Eileen S. Maunus, Asst. Counsel, Kenneth Skelly, Chief Counsel, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This appeal from the revocation of a restaurant liquor license presents a question never before addressed by this Court: the extent to which a licensee may be liable for illicit drug transactions by an employee. We hold that a strict liability standard is inappropriate and that at least some degree of scienter is required. When violations of the Liquor Code and its attendant laws and regulations are not the conduct under review, a licensee is liable only if he knew or should have known of the illegal activity and if he fails to prove substantial affirmative measures taken to eliminate a known pattern of illegal activity.

The facts of the case are as follows. In January, 1984, Ron Jacobs was employed as a doorman at Peter P's, the licensed premises. On January 25, inside the restaurant, an informant and an undercover agent arranged to purchase heroin from Jacobs for $30. Jacobs refused to deliver the heroin in the restaurant, so the parties left and the exchange was made off the premises.

Following a hearing, the Pennsylvania Liquor Control Board (PLCB) revoked Peter P's liquor license due to the sale of heroin by Jacobs. The PLCB found: "The licensee, by its servants, agents or employes permitted the use of its licensed premises in the furtherance of the traffic in or use of a controlled substance, on January 25, 1984...." On appeal, a de novo hearing was held, and the court of common pleas sustained the license revocation. The Commonwealth Court, in an unreported opinion, affirmed the order of the common pleas court, reasoning that the violation occurred on the licensed premises. The court relied on its decision in *Bates v. Commonwealth*, 40 Pa.Cmwlth. 426, 397 A.2d 851 (1979). *Bates*, where the violation occurred on the licensed premises, held that "violation of the laws regarding the use or sale of controlled substances by an employee, regardless of whether the licensee had knowledge of the conduct, constitutes proper grounds for license suspension," citing *Sobel Liquor License Case*, 211 Pa.Su-

per. 129, 235 A.2d 623 (1967). We allowed this appeal to address the question whether a liquor license may be suspended or revoked due to illegal activity which is unknown to the licensee or whether the licensee must have knowledge of the misconduct.

■ A violation of the Liquor Code or its attendant laws and regulations places a liquor license in jeopardy on a basis of strict liability—that is, a license may be suspended or revoked for such a violation regardless of whether the licensee knew or should have known of the misconduct. This is due to the legislative mandate in the Liquor Code:

§ 4–471. **Revocation and suspension of licenses; fines**

Upon learning of *any violation of this act* or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws, of any violation of any laws of this Commonwealth or of the United States of America relating to the tax-payment of liquor or malt or brewed beverages *by any licensee within the scope of this article, his officers, servants, agents or employes,* or upon any other sufficient cause shown, the board may, within one year from the date of such violation or cause appearing, cite such licensee ... to show cause why such license should not be suspended or revoked or a fine imposed....

47 P.S. § 4–471 (emphasis added). This statute has been interpreted as authorizing license suspension or revocation regardless of a licensee's ignorance of his employee's misconduct. *See, e.g., Commonwealth v. Koczwara,* 397 Pa. 575, 155 A.2d 825 (1959); *PLCB v. Dobrinoff,* 80 Pa. Cmwlth. 453, 457, 471 A.2d 941, 943 (1984); *Allegheny Beverage Co. v. PLCB,* 67 Pa.Cmwlth. 487, 492, 447 A.2d 725, 727 (1982). *Koczwara* reasoned that:

"There is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary in the regulation and control of the use and sale of alcoholic beverages." ... Individuals who embark on such an enterprise do so with knowledge

of considerable peril, since their actions are rigidly circumscribed by the Liquor Code.

*Koczwara,* 397 Pa. at 580–81, 155 A.2d at 828. The Court held that "the legislature *intended* to impose vicarious criminal liability on the licensee-principal for acts committed on his premises without his presence, participation or knowledge." *Id.,* 397 Pa. at 582, 155 A.2d at 528 (emphasis in original). Thus we interpret the emphasized language of section 4–471 to make a licensee strictly liable for violations of the liquor laws and regulations.

■ In addition to strict liability for adherence to the liquor laws and regulations, section 4–471 permits revocation or suspension of a liquor license "upon other sufficient cause shown." It is well established that violations of criminal laws other than the Liquor Code may constitute sufficient cause for revocation or suspension of a liquor license. *See, e.g., I.B.P.O.E. Liquor License Case,* 163 Pa.Super. 395, 397, 62 A.2d 68, 69 (1948); *PLCB v. Althouse,* 94 Pa.Cmwlth. 141, 143, 503 A.2d 90, 91 (1986); *Primo's Bar, Inc. Liquor License Case,* 48 Pa.Cmwlth. 188, 191, 409 A.2d 1369, 1371 (1979); *Quaker City Development Co. Appeal,* 27 Pa.Cmwlth. 13, 15, 365 A.2d 683, 684 (1976). We decline, however, to apply the rigid standard of strict liability when the subject conduct does not violate the liquor laws, but instead involves conduct prohibited by the Crimes Code, the Controlled Substance, Drug, Device and Cosmetic Act, or other penal legislation. In the latter cases, some element of scienter on the part of the licensee is required to endanger the liquor license.

As to what quantum of guilty knowledge or intent will justify proceedings against a liquor license, the caselaw developed by the Commonwealth Court provides some guidance. Two principles in particular are expressly approved. The first is that if a licensee knew or should have known of illegal activities by an employee or patron, the licensee is liable. The second principle is that a licensee may defend his license by demonstrating that he took substantial affirmative steps to guard against a known pattern of illegal

activities. The two principles go hand in hand, for when it is determined that a licensee did not but should have known of covert illegal activities by an employee or patron, the case is likely to involve a discernible pattern of illegal activity.

Both principles are exemplified in the case of *Bates v. Commonwealth, supra.* Bates's liquor license was revoked because he "permitted" unlawful traffic of drugs on his premises; it was undisputed that drug sales occurred on the premises, albeit by patrons rather than employees, that numerous controlled substances were discovered during police raids, and that drug-related arrests were made on the premises. Defining "permitted" as "acquiesced by failing to prevent," the court held that Bates had permitted the drug trafficking, due to the obvious nature of the activity *and* due to his failure to prove he took "substantial affirmative measures … to eliminate a known pattern of use of and traffic in controlled substances on his premises...." *Id.*, 40 Pa.Cmwlth. at 431–32, 397 A.2d at 853. His permission or acquiescence constituted "other sufficient cause" for revocation pursuant to 47 P.S. § 4–471, *supra.*

We think the foregoing analysis in *Bates* is sound, though it relied in part on *Sobel Liquor License Case, supra,* and *Dubin Liquor License Case,* 210 Pa.Super. 346, 234 A.2d 7 (1967), which we expressly disapprove. *Sobel* and *Dubin* held that no "distinction should be made between a violation of the Liquor Code and a violation of The Penal Code," and that "a liquor license may be suspended or revoked for a violation by an employe without proof of a pattern of activity and despite the absence of evidence that the licensee had personal knowledge" thereof. *Sobel,* 211 Pa.Super. at 132, 235 A.2d at 623–24; *Dubin,* 210 Pa.Super. at 348, 234 A.2d at 8. Only when the violation involves the Liquor Code or its related laws and regulations may a license be revoked without scienter on the part of the licensee. If the misconduct by an employee or patron is outside the liquor laws, a license is revocable only if the licensee knew or should have known of the misconduct and if he fails to

prove that he took substantial affirmative measures to prevent the misconduct.

■ Applying the foregoing standard to this case requires us to affirm the order of the Commonwealth Court. Assuming, as he testified, that the licensee did not know of Jacobs's activity, the record nonetheless establishes the existence of a pattern of drug trafficking at the establishment. A six-month investigation of Peter P's had been conducted by Donald Way, an undercover narcotics agent. Agent Way testified that he was able to purchase drugs from a patron of the establishment, and that he observed drug sales between patrons, sales of stolen goods, the use of drugs in the bathroom, and a drug sale take place in the presence of the bartender. Due to the pervasive nature of this illicit activity, it may be said that the licensee should have known of the misconduct of his employee. That being the case, he is deemed to have permitted or acquiesced in the misconduct unless he proved that he took substantial affirmative measures to prevent it.

■ Although the licensee argues that he attempted to prevent drug trafficking at Peter P's, the record indicates the limited extent of his effort. He testified that he posted signs warning against drug use and instructed his employees that they should keep their eyes open for drugs and should bar any drug user from entering the establishment. Even this evidence was contradicted by the testimony of agent Way, who denied seeing any signs prohibiting drug sales or use at any time during his six-month investigation. The licensee himself provided further evidence that his remedial measures were insubstantial; he testified that although he hired Jacobs as doorman to stem the obvious drug trafficking, he had no personal knowledge of Jacobs's character nor did he ask for character references. The record manifestly fails to prove that the licensee took the substantial affirmative steps necessary to avoid license revocation in the face of an obvious pattern of misconduct under the drug laws.

Accordingly, we hold that the license revocation was proper.

Order affirmed.

McDERMOTT, J., files a concurring opinion.

McDERMOTT, Justice, concurring.

I cannot accept the majority's dichotomous analysis of section 471 of the Liquor Code.[1] It has long been the law that a liquor licensee's transgressions of the criminal law should be treated in the same manner as liquor law violations. *See Sobel Liquor License Case*, 211 Pa.Super. 129, 235 A.2d 623 (1967); *Dubin Liquor License Case*, 210 Pa.Super. 346, 234 A.2d 7 (1967). The General Assembly has had ample time and opportunity to change this construction of the statute, but has not done so. I see no reason for us to change it now. Therefore, I dissociate myself from the majority opinion and concur in the result only.

---

**1.** Act of April 12, P.L. 90, art. IV § 471, *as amended* 47 P.S. § 4–471.