547 A.2d 1271

Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant *v.* The Boardwalk, Inc., Appellee.

Submitted on briefs April 19, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Eileen S. Maunus,* Assistant Counsel, for appellant.

*Louis E. Caputo, Caputo & Caputo, P.C.,* for appellee.

OPINION BY JUDGE CRAIG, September 20, 1988:

The Pennsylvania Liquor Control Board appeals from an order of the Court of Common Pleas of Allegheny County that reversed an order of the board revoking the liquor license of The Boardwalk, Inc.

The issues presented are (1) whether the court erred by concluding that the licensee was not responsible for drug-dealing activities having some contact with the licensed premises, and (2) whether the court erred by concluding that revocation of the corporation's liquor license was not warranted where the corporate ownership had passed to lienholders not connected with the

violations of the Liquor Code[1] for which the board cited the corporate licensee, even though those violations otherwise were sufficient to justify an order of revocation.

The board's revocation order was based on the following findings:

1. The licensee, by its servants, agents or employes aided, abetted or engaged in the traffic in or sale of a controlled substance on the licensed premises in the furtherance of the traffic in or use of a controlled substance, on December 12, 1984.

2. The licensee, by its servants, agents or employes sold liquor and/or malt or brewed beverages after its Restaurant Liquor License expired on April 30, 1985 and had not been renewed, on May 25, 1985 . . . .

The licensee appealed from the board's order, and the common pleas court conducted a de novo hearing. The court summarized the testimony on the issue of drug sales as follows:

Drug Enforcement Agency (DEA) Agent Joseph Ratter[2] purchased (2) ounces of cocaine on 24 October 1984 from a Mr. Farber (Farber).[3] On 1 December 1984 DEA Agent Ratter met with a John Kelleher (Kelleher) and a Frank Torsia, Jr. (Torchia) and again purchased two (2) ounces of cocaine from them. These two (2) transactions occurred during a time when the Licensee's premises were not open for business.

---

[1] Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§1-101 through 9-902.

[2] The transcript of the hearing indicates that the agent's name is Rotter. Reproduced Record 32a.

[3] The transcript consistently reads "Faber."

On 12 December 1984 DEA Agent Ratter made a phone call to order eight (8) ounces of cocaine for purchase. This call was made to Licensee's premises. A total of three (3) phone calls were made to or from Licensee's premises. Incoming calls were answered by Farber with the salutation 'Boardwalk.'

A search of Licensee's premises produced a white powder substance which was field tested and found to be cocaine.[4] Farber owned 150 shares in Licensee's premises as testified to by witness Guy M. Davis.[5] DEA Agent Ratter's testimony was corroborated [sic] by Special Agent James Devanney.[6] (Footnotes added.)

The trial court, as well as the board, found that the corporation sold alcoholic beverages after its license had expired in 1985. The uncontradicted testimony before the court of an LCB enforcement officer was that on May 25, 1985, roughly one month after the corporation's license expired on April 30, 1985, and before any renewal of the license, the officer visited the establishment shortly after midnight and found approximately 150 patrons, a jazz band, bartenders and someone collecting a cover charge. R.R. 29a-30a. The officer met

---

[4] Agent Rotter's uncontradicted testimony on this point was that twenty-three articles were seized from "a storage area behind the bar" and that some articles had the white powder residue that proved to be cocaine. R.R. 38a-39a.

[5] A certified copy of a letter of April 3, 1984, from the chief of the board's Retail Licensing Division to Boardwalk, admitted into evidence, listed only Cindy Torchia, Eric Ellis and John Kelleher as stockholders. LCB enforcement officer Davis testified that Kelleher owned 150 shares of stock. R.R. 42a. Agent Rotter testified that he had no knowledge of Faber's ownership of any shares in the corporation. R.R. 41a.

[6] The index to witnesses in the notes of transcript of the hearing lists this witness as James Devaney.

with Eric Ellis, stockholder and officer of the corporation, who admitted that the license had expired. The officer directed Mr. Ellis to cease operating at the close of the evening's business. R.R. 30a. Another officer in attendance at the bar that evening corroborated the first officer's testimony. R.R. 31a.

In addition, the court referred to evidence presented at the de novo hearing relating to the transfer of control of the corporation, after the events that resulted in the board's citations, to investors who were lienholders of the previous stockholders and who applied for a renewal of the license some eight months after the illegal operation in May of 1985.

The court reversed the board's revocation order based on (1) the court's findings that Faber's actions were in his own interest and not attributable to the licensee, and that the LCB did not show that any drug violations actually occurred on the licensee's premises, and (2) the court's conclusion that revocation based on the illegal beverage sales was not warranted where the effect would be to harm shareholders who were not in control of the corporation at the time of the violation.

### Section 471 of the Liquor Code

Before its amendment effective July 1, 1987, section 471 of the Liquor Code, 47 P.S. §4-471, provided in part as follows:

> Upon learning of any violation of this act or any laws of the Commonwealth relating to liquor, alcohol or malt or brewed beverages . . . by any licensee within the scope of this article, his officers, servants, agents or employes, or upon any other sufficient cause shown, the enforcement bureau may, within one year from the date of such violation or cause appearing, cite such licensee . . . to show cause why such li-

cense should not be suspended or revoked or a fine imposed, or both. . . . In the event the person who was fined or whose license was suspended or revoked by the board shall feel aggrieved by the action of the board, he shall have the right to appeal to the court of quarter sessions or the county court of Allegheny County in the same manner as herein provided for appeals from refusals to grant licenses. Upon appeal, the court so appealed to shall, in the exercise of its discretion, sustain, reject, alter or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court.

The Pennsylvania Supreme Court reexamined both the procedural and substantive aspects of this section in two recent decisions. In *Adair v. Pennsylvania Liquor Control Board,* Pa. , 546 A.2d 19 (1988), the Court reconsidered the procedural question of "when and under what circumstances the lower court may exercise its power to modify a penalty imposed by the board." *Adair,* 546 A.2d at 22. In *Adair,* the board revoked an individual's liquor license after conducting its own investigation of the licensee's establishment on learning of a bartender's pleading guilty to giving cocaine to an undercover Pennsylvania State Trooper in the bar.

On appeal, the court of common pleas modified the penalty to a $200 fine. On further appeal by the board, this court reversed the common pleas court's modification of the board's penalty on the strength of a long line of cases, in the Superior Court, this court and the Supreme Court, holding that the common pleas court could not modify a penalty imposed by the board unless the court made different findings of fact on material issues. The court concluded that the common pleas

court had not made such materially different findings in Adair's case.

The Supreme Court reversed, concluding that the line of cases relied on by this court was based on a misreading of section 471. In the Court's view, the language of that section authorizing the common pleas court to "sustain, reject, alter or modify the findings of fact and conclusions and penalties of the Board, based on the findings of fact and conclusions of law as found by the court" clearly and unambiguously empowered the common pleas court to modify a penalty of the board, whether the court's findings and conclusions were the same or different.[7] Further, the Court concluded that section 471 *required* the common pleas court to conduct a de novo review, with or without the taking of additional evidence, and to act on the basis of its own findings and conclusions.

In our view, the Supreme Court's ruling has changed the scope of review of this court in an appeal of a liquor license case. Previously, as noted by the Supreme Court, the scope of review was limited to a determination of whether the lower court committed error of law or an abuse of discretion and whether the board's order

---

[7] In a footnote, the Court noted that the quoted language had been deleted from section 471 when it was amended by the Act of June 29, 1987, P.L. 32. *Adair*, 546 A.2d at 25 n.8. As the Court indicated, the section now provides:

> In the event the bureau or the person who was fined or whose license was suspended or revoked shall feel aggrieved by the decision of the board, there shall be a right to appeal to the court of common pleas in the same manner as herein provided for appeals from refusals to grant licenses.

The Court's quotation of the somewhat similar language in the license refusal appeal section, section 466 of the Liquor Code, 47 P.S. §4-466, indicated that the Court did not consider that the amendment of section 471 affected the Court's holding.

was supported by "sufficient" evidence. *Adair*, 546 A.2d at 25 n.5 (citing *Acorn Club of Swissvale v. Pennsylvania Liquor Control Board*, 93 Pa. Commonwealth Ct. 335, 500 A.2d 1296 (1985)). Now, because the common pleas court is required to review the board's decision in an unrestrictedly de novo manner, and to act on the basis of its own findings and conclusions, our review must be for error of law or abuse of discretion by the trial court and to determine whether *the trial court's* findings of fact are supported by substantial evidence.

The Supreme Court reexamined the substantive aspect of section 471 in *Pennsylvania Liquor Control Board v. TLK, Inc.*, 518 Pa. 500, 544 A.2d 931 (1988), a case involving the revocation of a liquor license based on the sale of drugs by an employee to an undercover agent. The sale was negotiated on the licensed premises, but delivery was made off the premises. The Court held that under section 471:

> A violation of the Liquor Code or its attendant laws and regulations places a liquor license in jeopardy on a basis of strict liability—that is, a license may be suspended or revoked for such a violation regardless of whether the licensee knew or should have known of the misconduct.

*TLK, Inc.*, 518 Pa. at 503, 544 A.2d at 932.

However, the Court held that revocation or suspension of a license "for other sufficient cause shown," that is, for violations of laws *other than the Liquor Code*, most commonly for violations of the criminal laws, should not be a matter of strict liability. Rather, the Court held that under such circumstances penalties were proper only where "a licensee knew or should have known of illegal activities by an employee or patron," and that the licensee might defend "by demonstrating that he took substantial affirmative steps to guard against a known pattern of illegal activities." *Id.* at 504-05, 544 A.2d at 933.

The Supreme Court affirmed this court's order upholding revocation of the license, not because the licensee was strictly liable for the criminal conduct of its employee, but because the Court found ample evidence in the record to establish that illegal use and sales of drugs on the premises were pervasive, so that the licensee knew or should have known of those activities. In addition, the Court was not impressed with the evidence offered to show affirmative measures to combat those activities. *Id.* at 505-06, 544 A.2d at 934.

The significance of these recent decisions for our consideration of the case before us is as follows. On the issue of the common pleas court's finding the corporation not to be directly or vicariously involved in the sale of drugs, under *Adair,* we must accept the findings of fact of that trial court if they are supported by substantial evidence. Previously we could have concluded that the court committed error of law if the board's findings (relating to pervasive illegal activity of which the licensee knew or should have known, under *TLK, Inc.*) were supported by substantial evidence, and the court made different findings without an evidentiary basis for doing so. Now, however, we must accept the court's findings if they are supported by substantial evidence. Although, on this record, we might have made findings different from those of the court, given the evidence of drug-related activity associated with patrons and an owner of the corporation, we cannot say that the judge's findings are not supported by substantial evidence. Therefore, we shall not reverse the court's conclusion on the drug sales issue, which was based on his findings from his de novo review.

The trial court's second conclusion—that revocation was not warranted in this case for the illegal sales of beverages in May of 1985 because ownership of the stock of the corporation had passed to individuals not

involved in those sales—involves a pure error of law. *Adair*, of course, has no effect on this court's duty to review the common pleas court's conclusions for error of law and to reverse when such errors are discovered.

As the Supreme Court reemphasized in *TLK, Inc.*, a licensee is subject to revocation of its license for violation of the *Liquor Code* on the basis of strict liability. As the common pleas court acknowledged in its opinion, revocation of the corporation's license would have been warranted on the basis of the illegal beverage sales in May of 1985.

Nevertheless, the trial court concluded that affirmance of the board's revocation order now would harm innocent parties, and the court declined to enforce that order, citing *Primo's Bar, Inc. Liquor License Case*, 48 Pa. Commonwealth Ct. 188, 409 A.2d 1369 (1979). The licensee bases its argument on appeal entirely on *Primo's Bar* and on the case on which it primarily relied, *Price Bar Liquor License Case*, 203 Pa. Superior Ct. 481, 201 A.2d 221 (1964). However, the trial court's conclusion and the licensee's argument are based on a misreading of the cited cases.

In *Primo's Bar* this court held that revocation of a liquor license of a corporation based upon the third-degree murder conviction of a former sole shareholder and officer was not warranted where the conduct was not related to the Liquor Code or to the premises, and where the revocation would nearly destroy the security interest of the lender who had ousted the convicted person and who had taken control of the corporation. This court noted that the Superior Court in *Price Bar* had reversed a revocation against a corporate licensee, by refusing to hold that corporation responsible for the wrongdoing of a 50% stockholder who had been convicted of a crime in no way connected with the licensed business, not violative of the Liquor Code and not com-

mitted on the premises. We noted that the Superior Court had declined to impute the erring stockholder's wrong to the corporate licensee

> where the rights of innocent parties are involved *and the corporation is used for a legal purpose,* as otherwise the entire theory of the corporate entity would be made useless.

*Primo's Bar,* 48 Pa. Commonwealth Ct. at 192, 409 A.2d at 1372 (quoting *Price Bar,* 203 Pa. Superior Ct. at 484, 201 A.2d at 222, emphasis added).

The *Primo's Bar* court noted that one of the primary purposes of the "other sufficient cause" language in section 471 of the Liquor Code was to enable the board to act where the reputation of a licensee had been damaged. On the facts of that case, the court noted:

> There is no allegation that Santa [the convicted person] or any of his family members continue to be associated with the operation of the corporation *nor is there any issue raised of bad repute because of conduct occurring on the premises.*

*Primo's Bar,* 48 Pa. Commonwealth Ct. at 193-94, 409 A.2d at 1372 (emphasis added).

What distinguishes the present case from *Primo's Bar* and *Price Bar* is that here the violation that the trial court itself confirmed as a matter of fact—the sale of alcoholic beverages after the license expired—took place on the premises and involved a direct breach of the Liquor Code. *See* section 434 of the Code, 47 P.S. §4-434, providing that licenses are valid only for the license year for which they are issued. Therefore, *Primo's Bar* and *Price Bar,* relating to wrongdoing outside the Liquor Code, do not support the conclusion drawn by the court of common pleas under the circumstances of this case.

Accordingly, we shall reverse.

566

ORDER

NOW, September 20, 1988, the order of the Court of Common Pleas of Allegheny County at No. S.A. 1881 of 1986, dated March 10, 1987, is reversed.

PER CURIAM ORDER

NOW, November 30, 1988, upon consideration of the petition for reargument filed by appellee, reargument is denied, but reconsideration is granted and, pursuant thereto, this Court's Order dated September 20, 1988, is hereby revised to read, in its entirety, as follows:

NOW, November 30, 1988, the order of the Court of Common Pleas of Allegheny County at No. S.A. 1881 of 1986, dated March 10, 1987, is affirmed in part, namely, with respect to its determination as to the drug sales charge, and is reversed in part, for error of law, namely, with respect to the violation of making alcoholic beverage sales after expiration of license; accordingly, this case is remanded to the trial court for reconsideration of penalty to be imposed in the light of this Court's decision.

Jurisdiction relinquished.