# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police, :
Bureau of Liquor Control :
Enforcement, :
                 Appellant :
                 :
             v. : No. 2285 C.D. 2014
                 : Submitted: December 7, 2015
851 Penn Street, Inc. :

**BEFORE:**      **HONORABLE BONNIE BRIGANCE LEADBETTER,** Judge
                     **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                     **HONORABLE ROCHELLE S. FRIEDMAN,** Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                    **FILED: January 5, 2016**

        The Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau) appeals from an order of the Court of Common Pleas of Berks County denying the Bureau's appeal and affirming the order of the Pennsylvania Liquor Control Board (Board) dismissing Citation No. 12-1417 issued to Licensee 851 Penn Street, Inc. as the result of an incident that occurred at the Italian Garden in the City of Reading on April 14, 2012. The citation included

alleged violations of Section 471 of the Liquor Code (Code)[1] and numerous provisions of the Crimes Code.[2] We affirm.

After conducting a *de novo* review of the record, common pleas adopted the fact-findings of the administrative law judge (ALJ), which provide, in pertinent part, as follows.[3] Upon hearing gunshots at approximately 2:00 a.m. on April 14, 2012, a police officer with his vehicle parked in front of another licensed establishment looked toward Penn Street and saw a couple of people running. En route to the licensed premises, the officer heard additional gunfire. After parking his vehicle about a half block away, he approached on foot and observed a group of people in front of the Italian Garden. Although he did not see anyone shooting, upon drawing his weapon and approaching the group, he observed a man tucking a handgun into his waistband. He ordered everyone to drop to the ground and enlisted the aid of a familiar bouncer in securing the group. After backup arrived, the officer recovered two handguns from Licensee's security personnel.

As part of the investigation, the officer interviewed the three security personnel involved. They stated that, after escorting two groups of patrons outside,

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4-471. In relevant part, Section 471 of the Code authorizes the Bureau to cite a licensee for any violation of the Code or laws of this Commonwealth relating to liquor, alcohol, or malt or brewed beverages and, after a hearing on the citation, to suspend or revoke the licensee's license, impose a fine, or both.

[2] 18 Pa. C.S. §§ 101-9101.

[3] Pursuant to Section 471 of Code, a licensee has a right to appeal to common pleas in the same manner as provided for in appeals from refusals to grant licenses. In that regard, Section 464 of the Code provides that common pleas shall hear such appeals "*de novo* on questions of fact, administrative discretion and such other matters as are involved . . . ." 47 P.S. § 4-464. Following a *de novo* review, common pleas can sustain, alter, change, modify or amend the Board's actions, notwithstanding whether the court makes findings materially different from those made by the Board. *Skoritowski v. Pa. State Police, Bureau of Liquor Control Enforcement*, 742 A.2d 704, 706 n.4 (Pa. Cmwlth. 1999).

they heard numerous shots fired in front of the bar's exterior. Under the belief that everyone inside was in danger, they went outside with their firearms and fired several shots. They were licensed to carry firearms, but did not carry them openly inside the licensed premises. In addition, the officer reviewed footage from both the City's cameras and Licensee's security camera system. In summary, the videos depicted the events as follows:

> 7. The outside video of the event shows the three bouncers in front of the licensed premises. A car drives by with its window open. Muzzle flash is seen. The bouncers return fire. The video from inside the licensed premises shows what happened first: the bouncers react to shots outside by retrieving their handguns, which were hidden behind the bar. [Cleaner] Victor Menendez [sic] is seen to handle a firearm, which he is prohibited from doing as he is a convicted felon (N.T. 22-25).

ALJ's March 13, 2014 Adjudication, Finding of Fact (F.F.) No. 7. The inside footage "show[ed] that the handguns were hidden in a location where they could be seen only by a person behind the bar who was crouching and reaching deeply into a small dark space under the bar." *Id.*, F.F. No. 18. Accordingly, the officer charged two of the bouncers, Jose Ortiz and Cory Bryant, with numerous criminal offenses. Both pled guilty to charges of reckless endangerment. In addition, the police charged Victor Melendez-Rivera, hired as a cleaner but not authorized or directed by Licensee to bring a firearm to work, and he was convicted of possession of a firearm by a convicted felon.

In September 2012, the Bureau issued the two-count citation at issue, pertaining solely to the events of April 14, 2012. In the first count, the Bureau charged Licensee with a violation of Section 471 of the Code, operating a licensed establishment in a noisy and/or disorderly manner. In the second count, the Bureau alleged two violations: 1) Licensee, by its servants, agents or employees,

3

committed simple and aggravated assault, recklessly endangered another person and engaged in harassment and disorderly conduct in violation of Section 471 of the Code and Sections 2701, 2702, 2705, 2709 and 5503 of the Crimes Code;[4] and 2) Licensee's employee, Melendez-Rivera, possessed, used, manufactured, controlled, sold or transferred firearms in violation of Section 471 of the Code and Section 6105(a)(1) of the Crimes Code.[5] Following a December 2013 hearing, the ALJ dismissed the citation. The Board affirmed, with a dissenting opinion by the Board Chairman. Common pleas affirmed, adopting both the fact-findings and conclusions of law of the ALJ. The Bureau's appeal followed.

The Bureau presents two issues on appeal: 1) whether common pleas erred in dismissing the first count of the citation, operating a licensed establishment in a noisy and/or disorderly manner, on the ground that the evidence related only to a single incident; and 2) whether common pleas erred in dismissing the second count, pertaining to the illegal activity of Licensee's employees, on the grounds that Licensee lacked scienter and took substantial steps to ensure the safety of its patrons. On review, we are limited to determining whether the court abused its discretion, committed an error of law or made unsupported fact-findings. *Pa. State Police, Bureau of Liquor Control Enforcement v. S&B Rest., Inc.*, 52 A.3d 513, 516 (Pa. Cmwlth. 2012).

It is well established that, "where noise and disorderly conduct are isolated, and not of a relatively continuous nature causing disturbance and effrontery to the public welfare, peace and morals, Section 471 should not be a basis for suspension or revocation of a liquor license." *In the Matter of: Ciro's*

---

[4] 18 Pa. C.S. §§ 2701, 2702, 2705, 2709 and 5503.
[5] 18 Pa. C.S. § 6105(a)(1).

4

*Lounge, Inc.*, 358 A.2d 141, 143 (Pa. Cmwlth. 1976). Section 471 "is pointed to recurrent noise and disorder." *Id. See also Banks Liquor License Case*, 429 A.2d 1279, 1280 (Pa. Cmwlth. 1981) (*Banks I*) (requiring that noisy and disorderly conduct under Section 471 be of a routine nature). Further, while it is true that a violation relating to noisy and/or disorderly conduct can come under the catch-all provision of Section 471(a) of the Code, providing that a liquor license can be suspended, revoked or a fine imposed "upon any other sufficient cause shown," the conduct at issue must still be more than a single occurrence. *Ciro's Lounge*, 358 A.2d at 143. *See also Matter of Revocation of Restaurant Liquor License No. R-12122*, 467 A.2d 85, 88 n.4 (Pa. Cmwlth. 1983) (*Banks III*) (holding that disciplinary action for noisy and/or disorderly conduct based on the "other sufficient cause shown" provision "may only be found when the premises is *routinely* operated in such a manner"). (Emphasis in original). The Bureau is required to prove a violation of the Code by a clear preponderance of the evidence.[6] *Omicron Enters. Liquor License Appeal*, 449 A.2d 857, 859 (Pa. Cmwlth. 1982).

In the present case, acknowledging that *Ciro's Lounge* is established precedent, the Bureau invites this Court to revisit that decision and consider whether a single act of misconduct, under extraordinary circumstances, is sufficient to establish a violation under Section 471. In the alternative, the Bureau argues that *Ciro's Lounge* and its progeny are distinguishable because the instant case involved multiple incidents of disruptive conduct that occurred on a single

---

[6] A preponderance of the evidence necessitates "such proof as leads the fact-finder . . . to find that the existence of a contested fact is more probable than its nonexistence." *Sigafoos v. Pa. Bd. of Prob. & Parole*, 503 A.2d 1076, 1079 (Pa. Cmwlth. 1986).

date thereby making it analogous to the situation in *In re A-J-C, Inc.*, 401 A.2d 421 (Pa. Cmwlth. 1979).

As an initial matter, we do not perceive that the essentially undisputed facts warrant departure from established case law. As the Board observed: "While the occurrence of a 'shootout' involving a licensee's employees is extremely troubling to the Board, in the *narrow context* of a noisy and/or disorderly operations charge, this egregious but isolated incident does not meet the elements which the courts have deemed necessary to sustain such a charge." Board's July 16, 2014 Opinion at 11-12 (emphasis added). As even the Bureau acknowledged, "[t]he broad question presented in this appeal is whether the bar's liquor license is subject to administrative liability for the criminal acts of its employees." Bureau's Brief at 13. That broad question relates primarily to the second count of the citation, which we will address in due course. We turn to the Bureau's alternative argument, that the instant case is analogous to *A-J-C, Inc.*

In *A-J-C, Inc.*, the noisy and disorderly conduct included a domestic quarrel between the licensee and his wife and a scuffle between the licensee and two police officers. We rejected the licensee's argument that, under *Ciro's Lounge*, there was proof of only an isolated instance of noisy and disorderly conduct and that, therefore, the court below had erred in upholding the license revocation. In so doing, we noted that the license revocation "was based on proof of two charges: one concerning the noisy and disorderly conduct and another concerning [licensee's] plea of nolo contendere to a charge of aggravated assault." *A-J-C, Inc.*, 401 A.2d at 422. In contrast, the instant case involved one incident and, significantly, the criminal conduct at issue did not involve Licensee himself. As common pleas determined: "The proximate cause of the events of April 14,

6

2012, was the criminal behavior of persons who were not Licensee's agents, servants or employees. Licensee committed no act or omission which facilitated, caused, or contributed to that criminal behavior." ALJ's March 13, 2014 Adjudication at 5. Accordingly, the Bureau's reliance on *A-J-C, Inc.* is misplaced.

Additionally, in *Matter of Revocation of Restaurant Liquor License*, 447 A.2d 723, 724 (Pa. Cmwlth. 1982) (*Banks II*), we considered the quality and length of noisy and/or disorderly operation required to establish a violation under Section 471. The conduct at issue was the prolonged playing of loud music from late afternoon and into the early morning of the following day. Relying on *Banks I* and *Ciro's Lounge*, we reiterated that operation in a noisy and disorderly manner must occur on a routine basis and one instance of such operation, in and of itself, is insufficient to establish a violation of Section 471 of the Code. Accordingly, we: 1) rejected common pleas' determination that the fine was warranted, noting that it had limited the witnesses' testimony to the events of a date certain and that the evidence adduced regarding the prolonged period of loud music indicated only one instance of noisy operation; and 2) remanded the case for common pleas to consider the fact that the citation charged the licensee with operating its premises in a noisy and disorderly manner, not only on the date for which the court had limited the witnesses' testimony, but also *on other occasions*. *Banks II*, 447 A.2d at 724. The instant case is distinguishable in that only one "occasion" is at issue.

Moreover, we find common pleas' analysis regarding Section 471 of the Code as it relates to the second count of the citation to be instructive regarding the first count. The court found "no evidence of a pattern of illegal activity caused by noisy and/or disorderly operation at the licensed premises prior to the events of April 14, 2012." ALJ's March 13, 2014 Adjudication at 5. Evidence of a pattern

7

is significant in that the repetition or recurrence of the requisite noisy and disorderly conduct is indicative of more than an isolated incident. Accordingly, we conclude that common pleas did not err in concluding that the conduct at issue constituted an isolated event of a singular nature and that the evidence was insufficient to support the first count. We turn now to the second count of the citation, pertaining to the illegal activity of Licensee's employees.

"Licensees are held strictly liable for violations of the Liquor Code that occur on the licensed premises." *St. Nicholas Greek Catholic Russian Aid Soc'y v. Pa. Liquor Control Bd.*, 41 A.3d 953, 958 (Pa. Cmwlth. 2012) [citing *Pa. Liquor Control Bd. v. TLK, Inc.*, 544 A.2d 931, 932-33 (Pa. 1988)]. They "are also held accountable for activity occurring off-premises where there is a causal connection between the licensed premises and the activity." *Id.* (citation omitted). In addition, while it is true that they may also be held accountable for non-Liquor Code violations, such as those under the Crimes Code, it must be "established that there was a pattern of illegal activity on the licensed premises about which the licensee knew or should have known, and the licensee failed to take substantial steps to prevent such activity." *BCLT, Inc. v. Pa. Liquor Control Bd.*, 120 A.3d 1069, 1076 (Pa. Cmwlth. 2015) [quoting *Philly Int'l Bar, Inc. v. Pa. Liquor Control Bd.*, 973 A.2d 1, 3 (Pa. Cmwlth. 2008)]. In that regard, the well-established tenet holds true that some element of scienter on the part of the licensee is required to endanger a liquor license "when the subject conduct does not violate the liquor laws, but instead involves conduct prohibited by the Crimes Code, the Controlled Substance, Drug, Device and Cosmetic Act,[7] or other penal legislation." *TLK, Inc.*, 544 A.2d at 933 (footnote added).

---

[7] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101 – 780-144.

8

In the present case, common pleas concluded that there was no evidence of a pattern of illegal activity caused by noisy and/or disorderly operation of the licensed premises before April 14, 2012 and, therefore, that Licensee could not be held responsible for the events of that date. In addition, it found that there was insufficient evidence to show that Licensee knew or should have known in advance of the dangerous events taking place outside its premises on that date. As previously noted, the court gave greater weight to the evidence indicating that the proximate cause of the shootout was the criminal behavior of outside actors. *See Omicron Enters*, 449 A.2d at 860 (holding that questions of evidentiary weight are within the purview of common pleas).

Moreover, specifically regarding Licensee's employees, common pleas determined that the events of the date at issue were not caused by the fact that Licensee permitted its security personnel to bring their firearms to work for self-protection and did not constitute negligence on the part of the Licensee. In that regard, common pleas concluded that Licensee did not direct or authorize the acts of its employees outside the premises, finding as follows:

> The rules regarding escorting people out were that the bouncers were not supposed to lay hands on them, but to try to talk to them on the way out, to not let them take alcohol outside, and to touch them only when there was a fight and it was physically necessary. The owner's directions were to have nothing to do with what goes on outside, to leave that to the police.

ALJ's March 13, 2014 Adjudication, F.F. No. 15. As for Melendez-Rivera, common pleas found that Licensee did not authorize his possession of a firearm in that it had hired him only to clean.

Accordingly, based on its *de novo* review, common pleas concluded that the record simply did not establish that Licensee should have known that its

9

employees would commit crimes on the date in question and that, instead, it took substantial steps to ensure the safety of its patrons. Such steps included its eight-camera video surveillance system, a metal detector at the door and a transaction scanner to verify identifications. *Id*., F.F. No. 17. We conclude that common pleas did not err in dismissing the second count of the citation.

For the above reasons, therefore, we affirm.


_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,     :
Bureau of Liquor Control     :
Enforcement,     :
                Appellant     :
    :
            v.     :   No. 2285 C.D. 2014
    :
851 Penn Street, Inc.     :

# **O R D E R**

AND NOW, this 5th day of January, 2016, the order of the Court of Common Pleas of Berks County is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge