546 A.2d 19

Josephine E. ADAIR, t/a/d/b/a T & R Grill;  Mary E. Terregino, Intervenor,

v.

PENNSYLVANIA LIQUOR CONTROL BOARD.

Appeal of Mary E. TERREGINO, Intervenor.

Josephine E. ADAIR, t/a/d/b/a T & R Grill;  Mary E. Terregino, Intervenor,

v.

PENNSYLVANIA LIQUOR CONTROL BOARD.

Appeal of Josephine E. ADAIR, t/a/d/b/a T & R Grill.

Supreme Court of Pennsylvania.

Argued March 9, 1988.

Decided July 28, 1988.

104

Theodore H. Watts, Watts, Pepicelli, Youngs and Youngs, P.C., Meadville, for Josephine E. Adair, etc.

George J. Barco, Yolanda G. Barco, Barco & Barco, Meadville, for Mary E. Terregino, Intervenor.

Kenneth B. Skelly, Chief Counsel, Eileen Maunus, Asst. Counsel, Pennsylvania Liquor Control Bd., Harrisburg.

Before LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Before us in this appeal is the recurring question of the extent of the authority of the lower court to alter or modify a penalty imposed on a licensee by the Pennsylvania Liquor Control Board (Board). The Board, after finding that the appellant-licensee, Josephine E. Adair, trading as T & R Grill violated the laws of the Commonwealth and/or the regulations of the Board relating to liquor, alcohol and malt or brewed beverages, revoked appellant's restaurant liquor license. The appellant appealed to the Court of Common Pleas of Crawford County and, after a *de novo* hearing on July 31, 1984, that court reversed the decision of the Board and imposed a fine of two hundred dollars ($200.00) in place of the order of revocation.[1] On further appeal, this time by the Board, the Commonwealth Court reversed the lower court order and reinstated the Board's order revoking appellant's license. The Commonwealth Court held that the lower court may alter or modify action taken by the Board *only* when the lower court makes a finding of fact materially different from the findings of the Board.[2] The Commonwealth Court concluded that the lower court made no materially different finding of fact, therefore it had no authority to modify or change the penalty of revocation imposed by the Board. After reviewing the record we disagree, and now reverse.

1. After the appellant filed her appeal in the Common Pleas Court, Mary E. Terregino petitioned to intervene for the purpose of assuring that all of the material facts and pertinent law relating to the license revocation was brought to the attention of the court. Her petition to intervene was granted and Mary E. Terregino, through her attorney, participated, as intervenor, in the *de novo* hearing and at all stages of appeal.

2. *Pennsylvania Liquor Control Board v. Adair*, 101 Pa.Cmwlth. 163, 515 A.2d 1016 (1986).

The evidence presented in this case established that beginning in August, 1981, and continuing for approximately one year, Pennsylvania State Trooper, Dennis Lagan, conducted an in depth undercover drug investigation in the Meadville, Crawford County, area. The appellant's T & R Grill was one of the many places he frequented.

On April 19, 1982, Trooper Lagan arrived at the T & R Grill at about 11:40 p.m. Working as a bartender that evening was Cindy McCormick, a young woman with whom Trooper Lagan had developed a relationship. He saw her socially after working hours 3 or 4 times a week. Trooper Lagan proceeded to the bar and had a conversation with Ms. McCormick. Ms. McCormick told him that she was upset because she and a friend put up $25 each to buy one-half (½) gram of cocaine. After the purchase she and her friend discovered that they received only one-quarter (¼) gram. Trooper Lagan asked Ms. McCormick about the availability of additional cocaine.[3] He indicated that he was interested in obtaining one or two grams. Ms. McCormick, reacting to Trooper Lagan's inquiry, left the bar and checked with her friend who, at the time, was in the ladies restroom. She returned to the bar area and told Trooper Lagan that no more cocaine was available. She then handed him a package which contained five milligrams of cocaine—enough for one "snort."[4] Trooper Lagan offered to pay for the cocaine, but Ms. McCormick refused to accept anything for it. She gave the cocaine to him as a gift, motivated by her affection for him. She was under the impression that Trooper Lagan was her "boyfriend," as her social and personal contacts with him led her to fall in love with him. Trooper Lagan, fulfilling his duties as a police officer, arrested Ms. McCormick and charged her with delivery of cocaine. Subsequently, she entered a plea of guilty to that charge.

**3.** Ms. McCormick testified that Trooper Lagan, who she knew under an assumed name, was always looking for cocaine in different quantities.

**4.** Notes of Testimony at 35 (July 31, 1984).

A report of the incident involving Ms. McCormick and the cocaine eventually made its way through law enforcement channels to the Pennsylvania Liquor Control Board. The Board conducted an investigation and as a result thereof issued a citation to the appellant-licensee. The citation charged:

> You, by your servants, agents or employes, aided, abetted and engaged in the traffic in or sale of a controlled substance on the licensed premises and/or permitted the use of your licensed premises in the furtherance of the traffic in or use of a controlled substance: April 20, 1982.

A hearing on the charge was held on July 16, 1983 before C. Doyle Steele, Hearing Examiner for the Board. Following the hearing, the Board found that:

> The licensee, her servants, agents or employes, aided, abetted and engaged in the traffic in or sale of a controlled substance on the licensed premises and/or permitted the use of her licensed premises in the furtherance of the traffic in or use of a controlled substance, on April 20, 1982....

Further, the Board found that the licensee violated the laws of the Commonwealth of Pennsylvania and/or the regulations of the Board relating to liquor, alcohol and malt or brewed beverages, and that a severe penalty was warranted. Accordingly, the Board ordered that the restaurant liquor license issued to Josephine E. Adair for premises known as T & R Grill be revoked.

The appellant filed a timely appeal from the order of revocation to the Court of Common Pleas of Crawford County. In her appeal appellant averred, inter alia, that the allegations against her were not proven by a preponderance of the evidence; and that the findings of the Board were not supported by the weight of the evidence.

The matter came up for a hearing before the Honorable P. Richard Thomas, P.J. of the Crawford County Common Pleas Court. After hearing the evidence anew, Judge Thomas entered an order reversing the Board's decision to revoke appellant's restaurant liquor license. As we previ-

ously noted, Judge Thomas instead fined appellant $200. On appeal by the Board, the Commonwealth Court reversed the order of the Crawford County Common Pleas Court and reinstated the order of revocation issued by the Board. We granted appellant's petition for allowance of appeal.

The primary question raised in this appeal is whether the lower court acted properly and correctly and within its power and authority in making its own findings and conclusions, and reversing the order of revocation of the Board.[5] Section 471 of the Liquor Code, 47 P.S. § 4–471, provides:

§ **4–471. Revocation and suspension of licenses; fines**

Upon learning of any violation of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws, of any violation of any laws of this Commonwealth or of the United States of America relating to the tax payment of liquor or malt or brewed beverages by any licensee within the scope of this article, his officers, servants, agents or employes, or upon any other sufficient cause shown, the board may, within one year from the date of such violation or cause appearing, cite such licensee to appear before it or its examiner, not less than ten nor more than sixty days from the date of sending such licensee, by registered mail, a notice addressed to him at his licensed premises, to show cause why such license should not be suspended or revoked or a fine imposed. Hearings on such citations shall be held in the same manner as provided herein for hearings on applications for license. Upon such hearing, if satisfied that any such violation has occurred or for other sufficient cause, the board shall immediately suspend or revoke the license, or impose a fine of not less than fifty

---

**5.** The scope of review in this appeal from the lower court's decision in a de novo hearing on a liquor citation, as noted by the Commonwealth Court, is limited to a determination of whether the lower court committed an error of law or an abuse of discretion and whether the Board's order is supported by sufficient evidence. *Acorn Club of Swissvale v. Pennsylvania Liquor Control Board*, 93 Pa.Cmwlth. 335, 500 A.2d 1296 (1985).

dollars ($50) nor more than one thousand dollars ($1,000), notifying the licensee by registered letter addressed to his licensed premises. In the event the fine is not paid within twenty days of the order the board shall suspend or revoke the license, notifying the licensee by registered mail addressed to his licensed premises. Suspensions and revocations shall not go into effect until twenty days have elapsed from the date of notice of issuance of the board's order, during which time the licensee may take an appeal as provided for in this act. When a license is revoked, the licensee's bond may be forfeited by the board. Any licensee whose license is revoked shall be ineligible to have a license under this act until the expiration of three years from the date such license was revoked. In the event the board shall revoke a license, no license shall be granted for the premises or transferred to the premises in which the said license was conducted for a period of at least one year after the date of the revocation of the license conducted in the said premises, except in cases where the licensee or a member of his immediate family is not the owner of the premises, in which case the board may, in its discretion, issue or transfer a license within the said year. In all such cases, the board shall file of record at least a brief statement in the form of an opinion of the reasons for the ruling or order. *In the event the person who was fined or whose license was suspended or revoked by the board shall feel aggrieved by the action of the board, he shall have the right to appeal to the court of quarter sessions or the county court of Allegheny County in the same manner as herein provided for appeals from refusals to grant licenses. Upon appeal, the court so appealed to shall, in the exercise of its discretion, sustain, reject, alter or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court....* (emphasis supplied.)
Act of 1951, April 12, P.L. 90, Art. IV § 471, as amended 1971, June 3, P.L. 143, No. 6 § 1 (§ 509(a) (147)) 47 P.S. § 4–471. The Liquor Code thus establishes that where a

decision of the Board is appealed to the trial court, that court is to make findings of fact and conclusions of law and then, based upon its findings and conclusions, sustain, reject, alter or modify the findings, conclusions and penalties of the Board. Time and again the appellate courts of the Commonwealth have been called upon to consider the question of when and under what circumstances the lower court may exercise its power to alter or modify a penalty imposed by the Board.

In a line of cases involving liquor code violations, the Superior Court has held repeatedly that the lower court has no authority to modify a penalty unless it makes findings of fact on material issues that are different from those found by the Board. *Italian Citizens National Association of America Liquor License Case*, 178 Pa.Super. 213, 115 A.2d 881 (1955); *Appeal of Homestead Social & Beneficial Society*, 169 Pa.Super. 593, 84 A.2d 265 (1951); *Appeal of Enlisted Men's Club of Trafford*, 166 Pa.Super. 26, 70 A.2d 696 (1950); *In re Philadelphia J-L Corporation's Liquor License*, 166 Pa.Super. 237, 70 A.2d 698 (1950); *Banterla Liquor License case*, 166 Pa.Super. 544, 72 A.2d 602 (1950); *In re Pacewicz*, 152 Pa.Super. 123, 31 A.2d 361 (1943); *In re Revocation of Restaurant Liquor License No. R-8981 Issued to John Mami*, 144 Pa.Super. 285, 19 A.2d 549 (1941); *In re Revocation of Retail Dispenser's Eating Place License No. E-914*, 149 Pa.Super. 97, 25 A.2d 778 (1942); and *Commonwealth v. Hildebrand*, 139 Pa.Super. 304, 11 A.2d 688 (1940).

Similarly, a line of cases involving liquor violations developed in the Commonwealth Court [6] in which that court has applied the same principle that had been followed in the Superior Court, namely, that the lower court may not change a penalty imposed by the Board unless the lower

6. The Appellate Court Jusisdiction Act of 1970 transferred appellate jurisdiction over appeals of the kind involved here from the Superior Court to the Commonwealth Court. That Act was repealed by the Judiciary Act Repealer Act (JARA) and the JARA Continuation Act of 1980 and replaced by provisions of the "Judicial Code," 1976, July 9, P.L. 586, No. 142, effective June 27, 1978. See 42 Pa.C.S.A. § 762.

court finds materially different facts. *Pennsylvania Liquor Control Board v. Second Street Beer Distributor, Inc.,* 97 Pa.Cmwlth. 459, 509 A.2d 976 (1986); *In The Matter of Revocation of Restaurant Liquor License No. R–13634,* 94 Pa.Cmwlth. 471, 503 A.2d 1081 (1986); *Pennsylvania Liquor Control Board v. Eclectic Enterprises, Inc.,* 76 Pa.Cmwlth. 626, 464 A.2d 683 (1983); *Carter v. Pennsylvania Liquor Control Board,* 75 Pa.Cmwlth. 580, 462 A.2d 932 (1983); *Pennsylvania Liquor Control Board v. Flowers, Davis Enterprises, Inc.,* 74 Pa.Cmwlth. 514, 459 A.2d 1374 (1983); *In The Matter of Revocation of Hotel Liquor License,* 73 Pa.Cmwlth. 198, 457 A.2d 1035 (1983); *Pennsylvania Liquor Control Board v. Camac Bar, Inc.,* 43 Pa.Cmwlth. 349, 403 A.2d 136 (1979); *Pennsylvania Liquor Control Board v. Herb Anthony Enterprises, Inc.,* 35 Pa.Cmwlth. 343, 386 A.2d 1043 (1978); *Appeal of R.G.R. Enterprises, Inc.,* 30 Pa.Cmwlth. 607, 374 A.2d 998 (1977); *In The Matter of Revocation of Club Liquor License No. C–2669 Issued To Road Drivers' Association of Pennsylvania,* 30 Pa.Cmwlth. 323, 373 A.2d 1161 (1977); *Barone's, Inc. v. Pennsylvania Liquor Control Board,* 10 Pa. Cmwlth. 563, 312 A.2d 74 (1973); and, *Pennsylvania Liquor Control Board v. M.S.G., Inc.,* 7 Pa.Cmwlth. 540, 297 A.2d 556 (1972).

The appellant argues that the rule barring modification of a Board imposed penalty absent a finding of materially different facts by the lower court is inequitable in that it gives the Board the unbridled right to abuse its discretion and impose unduly severe and harsh penalties not commensurate with the facts and the violation found. The appellant contends that this obvious inequity has led to inconsistent application of the rule, particularly in the Commonwealth Court. For example, at times that court will stretch a point to find that the lower court's findings involve a material change in the facts in order to sustain a penalty modification. At other times, the Commonwealth Court will apply the rule strictly and reject additional or different findings made by the lower court as not material. Compare *Pennsylvania Liquor Control Board v. M.S.G., Inc., su-*

*pra* (Board suspended license for ten days for unlawful sales to a minor. The trial court found the same violation but modified the penalty to a suspension for two days, based primarily on its additional finding that the minor had presented four false unofficial identification cards to the licensee's agents. The Commonwealth Court found this to be a materially different fact and sustained the lower court's action.) and *Barone's, Inc. v. Pennsylvania Liquor Control Board, supra,* (Board found licensee violated liquor code on September 13, 1971 and November 12, 1971 and revoked his license. The lower court found that licensee was in violation only on November 12, 1971 and modified the penalty to a suspension for ninety days. The Commonwealth Court affirmed the modified penalty apparently concluding that the lower court's finding of a violation on only one day instead of two was a material change.) with *In The Matter of Revocation of Restaurant Liquor License No. 13634, supra.* (Board revoked license for sales to *minors* on March 13, 1983 and March 14, 1983. The trial court found that only *one minor* was served on each of the dates and that the Board failed to consider the mature appearance of one of the minors and the fact that she presented a false identification card. The Commonwealth Court, holding that the lower court's findings did not constitute materially different facts, reversed.)

By way of further illustration, we examine the findings made in the instant case. Here the Board found simply that:

> The licensee, her servants, agents or employees, aided, abetted and engaged in the traffic in or sale of a controlled substance on the licensed premises in the furtherance of the traffic in or use of a controlled substance, on April 20, 1982....

Later, under a court order to do so, the Board amended its finding and added that: "A State Police Officer on April 20, 1982, received a quantity of cocaine from the barmaid at the subject premises." This finding, as amended, was the only finding made by the Board.

Following the hearing *de novo*, the lower court made additional findings which it deemed material: 1) that there was evidence presented to the court that was not submitted to the Board, namely, the testimony of the barmaid Cindy McCormick; 2) that Ms. McCormick was seeing the undercover State Trooper on a personal and social basis and she had fallen in love with him; 3) that the incident involved a single isolated delivery of "one snort" of cocaine by Ms. McCormick to her imagined boyfriend; 4) that this one isolated incident did not amount to a sale of or trafficking in drugs; and, 5) that Ms. McCormick did not receive payment for the cocaine as it was a gift to her imagined boyfriend. The lower court made these additional findings so that, following previous Superior Court and Commonwealth Court decisions, it could exercise its discretion and revise the penalty of revocation imposed by the Board. The lower court, in thus exercising its statutory discretion, concluded that under all of the circumstances of the case, the severe penalty of revocation was unwarranted.

The Commonwealth Court concluded that the findings of fact made by the lower court were not materially different from the facts found by the Board. Both the Board and the lower court found that the barmaid Cindy McCormick delivered a small quantity of cocaine to the undercover officer in the licensee's premises. According to the Commonwealth Court, this was the only material fact in the case and, on this point, the lower court's finding did not differ from that of the Board's. Thus, the Commonwealth Court held that the Lower Court lacked the authority to change the penalty imposed by the Board.

We had an opportunity to consider this issue in *Carver House, Inc. Liquor License Case*, 454 Pa. 38, 310 A.2d 81 (1973). There the majority followed the rule that in an appeal to the lower court from a Board decision, the lower court must make findings of fact materially different from the findings made by the Board before the court may alter or modify the action taken by the Board. In reaching that

conclusion, the majority relied upon the reasoning in the line of Superior Court cases we cited above.[7]

We believe the evolution of this limitation on the authority of the lower court is based upon a misreading of section 471 of the Liquor Code. As previously noted, the Code provides: "[T]he court so appealed to shall, *in the exercise of its discretion,* sustain, reject, alter or modify the findings, conclusions and penalties of the Board, based upon the findings of fact and conclusions of law as found by the court." 47 P.S. § 4-471 (emphasis supplied). The language of the Code is clear and unambiguous. Its provisions do not require that the court make different findings or reach different conclusions in order to reject, alter or modify the conclusions and penalties of the Board. The Code authorizes the court to exercise its discretion based upon its findings and conclusions, whether its findings and conclusion are the same as or different from those of the Board.

The responsibility given to the Board is to make an initial determination of the facts, apply the relevant law, and, if warranted, impose a fair and equitable penalty for any violation found. The trial court's responsibility is to conduct a *de novo* hearing or review, make a determination of the facts and applicable law, and then sustain, reject, alter or modify the penalty imposed by the Board. This is so whether the lower court hears the evidence anew, takes

7. The majority in *Carver House* also cite the case of *Noonday Club of Delaware County, Inc. Liquor License Case,* 433 Pa. 458, 252 A.2d 568 (1969) to support the conclusion that the lower court may not alter the penalty imposed by the Board unless different facts of a material nature are found. In *Noonday,* we said: "[A]s a matter of judicial restraint and in the interests of a more effective and efficient administration of our entire judicial system in this Commonwealth, that penalties imposed by lower courts which are within the prescribed maximum and minimum allowable penalties under the applicable statutory provisions are not subject to review on appeal except in rare and unusual circumstances involving constitutional rights." *Id.,* 433 Pa. at 464-65, 252 A.2d at 572. Reliance on *Noonday* is not warranted for two reasons: First, the opinion in *Noonday* is an opinion joined by only one other justice, with two justices concurring in the result, two justices dissenting and one justice not participating; and second, the question there involved the authority of the Superior Court to modify a penalty imposed by the Board and affirmed by the lower court.

additional testimony or merely reviews the official transcript of the proceedings before the Board. *See Belasco v. Board of Public Education*, 510 Pa. 503, 510 A.2d 337 (1986). (We held there that in an appeal by an aggrieved professional employee under the School Code, the Secretary of Education is vested with authority to conduct a *de novo* review whether he takes additional testimony or reviews the record of the proceedings before the School Board).

Thus, we hold that in an appeal from a decision of the Board pursuant to section 471 of the Liquor Code,[8] the lower court is to conduct a *de novo* review, and in the exercise of its statutory discretion, make findings and conclusions. Based upon its *de novo* review, the lower court may sustain, alter, change or modify the penalty imposed by the Board. To be sure, the authority to alter, change modify or amend a Board imposed penalty may be exercised by the trial court whether or not it makes findings which are materially different from those found by the Board.

▆▆ In this case the lower court exercised the discretion vested in it by the Liquor Code and reduced the penalty of revocation to a fine of $200. We find no error of law or

8. Section 471 of the Act, as amended 1971, June 3, P.L. 143, No. 6 was reenacted and amended on June 29, 1987, P.L. 32, No. 14 § 70, 47 P.S. § 4–471. In the reenacted and amended section 471, the following language was deleted: "Upon appeal, the court so appealed to shall, in the exercise of its discretion, sustain, reject, alter or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court." The amended section 471 provides that: "In the event the bureau or the person who was fined or whose license was suspended or revoked shall feel aggrieved by the decision of the board, there shall be a right to appeal to the court of common pleas in the same manner as herein provided for appeals from refusals to grant licenses." Section 464 is the section of the Liquor Code that provides for appeals from refusals to grant licenses. Like section 471, section 464 was reenacted and amended June 29, 1987. Section 464, as reenacted and amended provides, in relevant part, that: "The court shall hear the application *de novo* on questions of fact, administrative discretion and such other matters as are involved. ... The court shall either sustain or overrule the action of the board and either order or deny the issuance of a new license or the renewal or transfer of the license to the applicant."

abuse of discretion on the part of the lower court.[9]

The order of the Commonwealth Court is reversed and the order of the Court of Common Pleas of Crawford County imposing a fine of $200.00 on appellant, Josephine E. Adair, t/d/b/a T & R GRILL, is reinstated.

NIX, C.J., did not participate in the consideration or decision of this case.

**9.** The appellant raises two additional issues in this appeal: First appellant argues that she was denied due process of law because the citation issued by the Board was so vague as to prevent an adequate defense. The lower court dismissed this issue by stating that the appellant made no objection to the lack of specificity in the citation prior to the hearing before the Board. Further, the appellant participated in the hearing before the Board, heard all of the testimony offered to establish a violation, and was fully aware of the charge prior to the *de novo* hearing before the lower court. We find no error in the lower court's ruling. Second, the appellant argues that the lack of specificity in the Board's opinion prevented the lower court from giving a meaningful review. The record shows that the lower court did order the Board to file an amended opinion containing more specific findings of fact and the Board complied, albeit minimally and late. Furthermore, the lower court conducted a hearing *de novo* and made its own findings and reached its own conclusions. Although we do not condone vague and non-specific opinions and orders, under the circumstances of this case we find little merit in appellant's argument.