550 A.2d 258

Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant *v.* Peacock Hotel, Inc., Appellee.

58

Submitted on briefs July 6, 1988, to Judges DOYLE and McGINLEY, and Senior Judge KALISH, sitting as a panel of three.

*Faith S. Deihl,* Assistant Counsel, with her, *Kenneth B. Skelly,* Chief Counsel, for appellant.

*Bernard V. O'Hare, O'Hare and Heitczman,* for appellee.

OPINION BY JUDGE McGINLEY, November 10, 1988:

The Pennsylvania Liquor Control Board (Board) appeals an order of the Court of Common Pleas of Northampton County (trial court) which reversed the citation at Case No. 85-3377 issued by the Board against the Peacock Hotel, Inc. (Licensee) on the following charges:

1. The Licensee was not a bona fide hotel where the public may for a consideration obtain meals in that there was insufficient supply of food on September 29, 1985.

2. The Licensee by its servants, agents or employees aided, abetted, or engaged in the traffic in or sale of a controlled substance on the licensed premises and/or permitted the use of its licensed premises for the furtherance of the traffic in or use of a controlled substance on September 21 and 29, 1985.

3. The Licensee by its servants, agents or employees employed known criminals and/or persons of ill repute on September 21, 29, October 4 and 5, 1985.

4. The Licensee, by its servants, agents or employees permitted upon the licensed premises solicitation of patrons for immoral purposes on September 29, 1985.

Opinion of the Board, November 17, 1986, at 1.

For these violations the Board revoked the license with bond forfeiture. At a companion citation, Case No. 86-0822, the trial court dismissed the Licensee's appeal of the Board's fine and revocation of Licensee's Sunday sales permit. Licensee has not appealed that part of the trial court's order.

Board Enforcement Officer James F. Vitaletti (Vitaletti) testified that he visited the Licensee premises on September 29, 1985. At approximately 12:50 a.m. Joseph Silva, also known as Joseph DaSilva (DaSilva), a son of Maria Silva, the sole corporate licensee (Notes of Testimony, February 27, 1987, (N.T.) at 17), became engaged with Vitaletti in conversation. Vitaletti commented that two female patrons were "cute" and DaSilva solicited a sexual act from one of the two on Vitaletti's behalf (N.T. at 7). The patron replied she didn't have time. (*Id.*)

Vitaletti observed Rick Hartnett (Hartnett), a son-in-law of Maria Silva, and DaSilva and another patron smoking marijuana in the kitchen. Previously, on September 21, 1985, Vitaletti testified he purchased two bags of marijuana from Hartnett, one bag of which Hartnett retrieved from the dining room area.

Vitaletti also requested some food and DaSilva replied none was available and sent Hartnett to a fast-food restaurant for hamburgers. Vitaletti testified that the next night he returned and was again told no food was available. Vitaletti also testified that Hartnett was tending the bar on September 21 (N.T. at 5) and that DaSilva was "overseeing" the bar on September 29 (N.T. at 9). Vitaletti also testified concerning the criminal records of DaSilva and Hartnett.

Hartnett testified that he obtained the marijuana he delivered to Vitaletti from other patrons and that he was not tending bar for his mother-in-law on the dates in question. Hartnett also stated that signs indicate that the kitchen closed at twelve o'clock. He admitted his criminal record and that he pled guilty to the delivery of the marijuana. DaSilva also testified. He admitted he was in charge of the premises during September of 1985. He denied he solicited any sexual act from any of the patrons on Vitaletti's behalf.

Maria Silva testified her father in Portugal died and she returned to her country of birth from September 5 until September 30, 1985. Mrs. Silva testified she was widowed in 1980. She stated she resides at the hotel which has a fifty-five thousand ($55,000) dollar mortgage.

The trial court found that the Board failed to meet its burden of proof regarding the violations concerning the allegation of an inadequate supply of food on hand, and the allegation involving solicitation of patrons for immoral purposes.

Formerly, in a liquor code violation appeal hearing the trial court could not reverse the Board absent a determination that the Board committed an error of law or an abuse of discretion, or a finding that the *Board's* determination was not supported by sufficient evidence. The roles of the Board, the trial court and the appellate court have been modified. The trial court is to conduct a de novo review and make its own findings and conclusions and our review is concerned with any error of law or abuse of discretion by the trial court and also to determine whether the *trial court's* findings are supported by substantial evidence. *Adair v. Pennsylvania Liquor Control Board*, 519 Pa. 103, 546 A.2d 19 (1988). Review of the record demonstrates that the trial court's findings regarding the allegations of an inadequate food supply and the solicitation of patrons for immoral purposes are supported by substantial evidence.

We now turn our review to the finding by the trial court that Hartnett was a patron of the Licensee and that Mrs. Silva was not responsible and could not be penalized for the sale of the marijuana. Again, the Supreme Court recently reviewed a case involving the revocation of a liquor license where a sale of a controlled substance was negotiated by an employee of the Licensee with an undercover agent on the licensed premises and the subsequent exchange was made off the premises. The Supreme Court held that the liquor license could *not* be revoked for such a violation of nonliquor statutes unless the Licensee knew or should have known of the misconduct. Now, penalties for violations of non-liquor statutes are proper only where the Licensee knew or should have known of the illegal activities of the employee or patron. *Pennsylvania Liquor Control Board v. TLK, Inc.*, 518 Pa. 500, 544 A.2d 931 (1988). Therein the Supreme Court also disapproved of

prior appellate decisions which "held that no 'distinction should be made between a violation of the Liquor Code and a violation of The Penal Code,' and that 'a liquor license may be suspended or revoked for a violation by an employe without proof of a pattern of activity and despite the absence of evidence that the licensee had personal knowledge' thereof." *Id.*, at 505, 544 A.2d at 933-34. In the present controversy the trial court found that Mrs. Silva went to Portugal because of her father's death and that the evidence of drug use did not establish a continuing pattern but occurred only in her absence. The trial court's determination is tantamount to a finding that Mrs. Silva did not know and could not have known of the illegal activity.

Finally, the Board argues that Mrs. Silva's son had prior criminal convictions, and that a violation occurred when his mother left him in charge. On August 11, 1982, DaSilva pled guilty to criminal attempt, criminal conspiracy and possessing instruments of crime and he was sentenced to four to twenty-three months in Northampton County Prison. On February 9, 1983, he was convicted of burglary and related offenses and sentenced to six to twenty months in Northampton County Prison. It is unlawful for a licensee to permit known criminals to frequent the licensed premises. Section 493(14) of the Liquor Code (Code), 47 P.S. §4-493(14).[1] Further, no retail licensee shall employ any person who is precluded by Section 493(14) of the Code from frequenting the licensed establishment. 40 Pa. Code §5.21. DaSilva lived at the hotel. (N.T. at 51.) Considering the nature of his criminal past and that he was twice incarcerated, it is reasonable to infer that his mother knew of the convictions.

---

[1] Act of April 12, 1951, P.L. 90, *as amended.*

Despite the foregoing, the trial court concluded that Maria Silva had to leave her son in charge of the hotel in September of 1985. Yet, two other individuals were identified as being bartenders during September, 1985. They are repeatedly identified as Blaine and Hector. There is no indication of record why they were not left in charge. The finding that DaSilva had to be left in charge is not supported by substantial evidence and does not provide a legal excuse to the Licensee. *Adair,* slip op. at 5.

The order of the trial court sustaining Licensee's appeal is affirmed as to the charges relating to insufficient food supply, traffic in or sale of a controlled substance, and solicitation for immoral purposes. The order of the trial court sustaining Licensee's appeal relating to the employment of a known criminal is reversed. We remand to the trial court for implementation of a proper penalty consistent with this opinion.

ORDER

AND NOW, this 10 day of November, 1988, the Order of the Court of Common Pleas of Northampton County, dated June 1, 1987, at Docket No. Misc. 360-1986, is affirmed as to charges relating to insufficient food supply, traffic in or sale of a controlled substance, and solicitation for immoral purposes. The order as to charges relating to the employment of a known criminal is reversed and remanded for implementation of a proper penalty. Jurisdiction relinquished.

Judge MACPHAIL did not participate in the decision in this case.