578 A.2d 1339

**In re: CONCORD RANCH, INC. d/b/a Encore Theater & Restaurant & Pulsations Nightclub (Three Cases).**

**Appeal of CONCORD RANCH, INC. d/b/a Encore Theater & Restaurant & Pulsations Nightclub (Three Cases).**

Commonwealth Court of Pennsylvania.

Argued June 11, 1990.

Decided July 19, 1990.

Howard A. Rosenthal, with him, Gary D. Fry (Pelino & Lentz, P.C., of counsel), for appellant.

Kenneth W. Makowski, Asst. Counsel, with him, Francis X. O'Brien, Jr., Chief Counsel, for appellee.

Before CRAIG, President Judge, PELLEGRINI, Judge, and NARICK, Senior Judge.

NARICK, Senior Judge.

Concord Ranch, Inc. (CRI) appeals from an order of the Court of Common Pleas of Delaware County upholding three suspensions, totalling 46 days, imposed by the Pennsylvania Liquor Control Board (PLCB) based on three separate citations. Citations 84–1889, 86–2078 and 86–3331 were consolidated by the trial court for a *de novo* hearing and involved a number of alleged violations. The trial court found substantial evidence existed to sustain each of the PLCB's averments, and upheld the suspensions. CRI disputes the validity of these findings, and alleges various due process violations.[1] Due to the diversity of the issues involved, we will address each citation separately.[2]

I. Citation No. 84–1889

A. Noise

The first of four averments [3] alleges:

You, by your servants, agents or employes used, or permitted to be used on the inside of the licensed premises, a loudspeaker or similar device whereby the sound of music or other entertainment, or the advertisement thereof, could be heard outside, on or about August 13, September 9, 10, 17, 18, 20, 21, October 3, 4, 5, December 15,

---

[1] Our scope of review is limited to a determination of whether the trial court has committed an error of law or an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. *Pennsylvania Liquor Control Board v. McKeesport Beer Distributor, Inc.,* 120 Pa.Commonwealth Ct. 554, 549 A.2d 256 (1988).

[2] Averment 3 of Citation No. 86–2078 and the whole of Citation No. 86–3331 will be dealt with concurrently, as the same violation is alleged in each.

[3] Averments 1, 2, 4, and 5 are at issue in this appeal. Averment 3 was dropped by the PLCB at the hearing stage.

17, 18, 31, 1983, January 5, 6, 15, 16, 17, February 17, 18, March 23, May 3, 5, 6, 8, 9, 10, 14, 15, 16, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, June 2, 3, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 15, 18, 19, 20, 21, 22, 29, 31, August 19, 1984, and on diverse other occasions within the past year.

The regulation at issue is 40 Pa.Code § 5.32(a):

No licensee may use or permit to be used inside or outside of the licensed premises a loudspeaker or similar device whereby the sound of music or other entertainment, or the advertisement thereof, can be heard on the outside of the licensed premises.

Appellant claims there was no evidence which established the existence of noise violations for several dates. We have thus made a careful review of the record to see if this contention has any merit.

At a PLCB hearing on December 3, 1985, various witnesses testified that they could hear music outside the premises on the following dates: August 13, 1983, May 31, June 2, 28, July 31, August 19, 1984. In the hearing before Judge Stively, the following dates were specified by witnesses as those on which such noise occurred: August 13, September 9, 10, 17, 18, 20, 21, October 4, 5, December 15, 17, 18, 31, 1983; January 5, 15, 16, February 17, 18, March 23, May 8, 9, 10, 14, 16, 21, 22, 23, 24, 25, 26, 27, 30, 31, June 2, 3, 9, 10, 13, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 28, 29, 30, July 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 31, August 19, 1984.

These dates do not all conform to the dates on the citation. We could find no evidence of the existence of noise disturbances on October 3, 1983; May 3, 5, 6, 9, 20, June 6, 7, July 11, 12, 15, 18, 19, 20, 21, 22, 29, 1984. Further, the *only* evidence presented for many of these dates attested to the fact that either the dinner theater (Encore) or the nightclub (Pulsations) was closed.[4] Although it was wholly within the trial court's discretion

4. At the time Pulsations opened, CRI already operated Encore on the premises. It appears that Encore is now closed, but during its

whether or not to accept such evidence as credible, the fact remains that the PLCB provided *no* evidence that noise existed on any of these dates and thus the violation, as it relates to these dates, cannot be sustained.

This Court faced a similar problem in *Pennsylvania Liquor Control Board v. The Upstage Corp.*, 115 Pa.Commonwealth Ct. 334, 540 A.2d 334 (1988). In that case, the PLCB found that the licensee had allowed minor(s) to frequent the premises, and served such minor(s) alcohol, on five specific dates in 1985. This Court ultimately upheld the existence of one violation, but remanded to the trial court[5] for a reassessment of the penalty since the evidence had only definitively established one date of the five enumerated as being a date on which a minor was served or was on the premises. Although the minor admitted that she frequented the establishment and was served alcohol on several occasions, she could not specify as to four of the dates in question. Since no other evidence was introduced concerning those dates, the PLCB's findings could not be based upon substantial evidence. The minor's testimony was held insufficient as a matter of law to establish those four violations.

Such is the case here. Testimony that the noise occurred frequently is insufficient as a matter of law to sustain the allegations concerning specific dates. Thus we reverse and remand as to the noise violations alleged on October 3, 1983; May 3, 5, 6, 9, 20, June 6, 7, July 11, 12, 15, 18, 19, 20, 21, 22, 29, 1984.

### B. After Hours Entertainment

■ Averment 2 of the citation alleges that CRI allowed dancing to continue beyond the legal closing time, in viola-

existence the premises operated as Encore during the day and Pulsations at night.

**5.** This case was decided before *Adair v. Pennsylvania Liquor Control Board*, 519 Pa. 103, 546 A.2d 19 (1988), which determined that the trial court's findings need not be materially different from the PLCB's in order for the trial court to alter, change, modify or amend a PLCB-imposed penalty. Nevertheless, the result in *Upstage* would have been the same.

tion of 40 Pa.Code § 5.35(a), which prohibits the occurrence of dancing or other forms of entertainment when the sale of alcohol is prohibited. CRI does not seriously dispute this claim, other than to say it has a strict policy of closing at 2:00 a.m., and that evening logs are maintained indicating the time at which entertainment ceases. Nevertheless, the testimony of a PLCB officer that he witnessed the continuation of dancing for approximately one-half hour after the cessation of alcohol sales on the evening in question is sufficient to sustain the violation.

### C. Open to General Public

■ Averment 4 alleges CRI's inaccessibility for the use and accommodation of the general public on June 25, 1984, in violation of Section 491(6) of the Liquor Code (Code), Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4-491(6), which reads in pertinent part as follows: "It shall be unlawful ... for any ... licensee ... to sell any liquor or malt or brewed beverages for consumption on the licensed premises except in a room or rooms or place on the licensed premises at all times accessible to the use and accommodation of the general public...." The enforcement officer's testimony that he was refused admission to an all-male review, even after offering twice the normal admission, was sufficient to sustain the court's finding that the premises were not accessible at all times to the general public.

### D. Bona Fide Hotel

■ Averment 5 of the citation alleges licensee's violation of Sections 102 and 461(c) of the Code, 47 P.S. §§ 1-102 and 4-461(c), caused by its failure to provide the required number of permanent bedrooms on August 22, 1984.[6]

6. Section 102 defines hotel as having, in a city, "at least ten, and in any other place at least six, permanent bedrooms...." In Section 461(c), the required number of permanent bedrooms varies according to the size of the municipality, but in all cases, "at least one-half of the required number of bedrooms shall be regularly available to transient guests seven days weekly, except in resort areas; at least one-third of such bedrooms shall be equipped with hot and cold water, a lavatory, commode, bathtub, or shower and a clothes closet; and an additional

There appears to be no dispute as to whether or not CRI had enough rooms available to serve as bedrooms. However, the Enforcement Officer who visited the premises on the date in question testified that there were desks and filing cabinets in all the available rooms, and that they all appeared to be in use as offices. There were mattresses, box springs, and bureaus stored in the basement. However, the statute requires "permanent" bedrooms, and substantial evidence exists that on the date in question CRI did not meet the statutory requirements.

II. Citation No. 86–2078 [7]

Averment 1 alleges the existence of noise violations on the following dates: "March 22, 23, 27, 28, April 12, 13, 17, 18, 19, 20, 24, 25, 26, 27, 28, 1986 and on diverse other occasions within the past year." Again, many of the dates specified in this citation are unsupported by any evidence. Thus the dates in March and early April (12, 13) have no substantiation in the record and must be reversed.

Averment 2 alleges a violation of 40 Pa.Code § 5.32(d), which prohibits contact and/or association between patrons and entertainers on the licensed premises. Enforcement Officer Youngblood testified that on June 5 she observed patrons kissing the dancers of the male review show, touching them, and putting money in their G-strings. CRI does not disagree that such contact occurred, but maintains that the PLCB had given its prior approval and thus they are estopped from citing CRI for violations of the regulation. However, the only evidence concerning this alleged approval is a letter from CRI to the PLCB "verifying" a phone conversation between Dan Pennick of the PLCB and Barry Gutin of Pulsations. The trial court did not credit this self-serving evidence and we are not in a position to do so.

one-third of the total of such required rooms shall be equipped with lavatory and commode...."

7. Averment 3 will be discussed with Citation No. 86–3331, below.

III.   Citation No. 86–3331

■   This citation alleges: "The licensee, by its servants, agents or employes sold and/or served an unlimited or indefinite amount of alcoholic beverages for a fixed price, on October 16 and 17, 1986...."

This is also the substance of Averment 3 of Citation No. 86–2078, which occurred on June 5, 1986.  For the following reasons, we must reverse both violations.

The regulation at issue provides in pertinent part:

(a) ... Retail licensees may not engage in the following discount pricing practices unless specifically excepted in subsection (b):

\*      \*      \*      \*      \*      \*

(3) The sale or serving, or both, of an unlimited or indefinite amount of liquor, wine, or malt or brewed beverages for a set price.

\*      \*      \*      \*      \*      \*

(b) *Exceptions.*   Nothing in subsection (a) prohibits:

(1) The offering of alcoholic beverages with a meal package.

All parties agree that at the times in question CRI offered, from 10:00 p.m.–2:00 a.m., an unlimited amount of food in the form of a buffet and an unlimited amount of drinks, both alcoholic and non-alcoholic, for a fixed price. The PLCB agent reporting the alleged violation testified to the buffet's existence and to the fact that it contained salads, sandwiches, hot foods and desserts.  She also stated that the free drinks were not available until the buffet was available.  The PLCB stipulated that the buffet was extensive, complete, served throughout the night and contained all food groups.  Yet the PLCB has concluded, and the trial court has agreed, that this does not constitute a meal package.

■   The PLCB's justification for this conclusion appears to be that an agency's interpretation of its own regulation is entitled to great deference.  This is true;  however, where

the interpretation is plainly erroneous or inconsistent with the controlling regulation, such deference disappears. *Toney v. Department of Public Welfare*, 127 Pa.Commonwealth Ct. 162, 561 A.2d 75 (1989), *E. Smalis Painting Co., Inc. v. Department of Transportation*, 70 Pa.Commonwealth Ct. 90, 452 A.2d 601 (1982).

The trial court acknowledged the lack of caselaw defining the term "meal package" but stated that deference to the PLCB's interpretation must control. However, we believe that here the PLCB's interpretation is clearly erroneous. The regulations make specific exception to the discount pricing rule when the alcohol is offered in connection with a meal package. We believe that an unlimited buffet, extensive, complete, and containing all food groups, more than conforms to anyone's reasonable interpretation of a "meal." Further, such a buffet, offered in conjunction with a drink special, becomes a "meal package" within the meaning of that phrase as used in the regulation. Thus, we reverse Citation No. 86–3331 in its entirety and reverse averment 3 of Citation No. 86–2078.

## IV. Due Process Violations

CRI first contends that in issuing Citation No. 86–2078 the PLCB failed to comply with the mandate of Section 471 of the Code, 47 P.S. § 4–471, requiring the PLCB or its officer to notify a licensee of an alleged violation within ten days of the completion of the investigation.[8] CRI cites *Pennsylvania Liquor Control Board v. Gatling Saloon & Dance Hall Corp.*, 98 Pa.Commonwealth Ct. 377, 511 A.2d 272 (1986) in support of this contention. However, we agree with the trial court that *Gatling* is not on point. In that case, the last PLCB visit to the premises was made on a day on which Gatling was closed, and the PLCB made no further attempt to return. This unproductive visit was almost two months after the PLCB's previous visit to the

8. Following these investigations and subsequent citations the Code was amended to provide for notice within thirty days of the completion of an investigation, with no limit on the length of the investigation.

premises, when a violation allegedly occurred. This Court agreed with the trial court that the investigation was complete as of the date after the last productive visit; not the unproductive visit two months later.

In the present case, the trial court found as a fact that the investigation did not conclude until June 8, 1986, after a *productive* visit on June 5. Notice was sent two days later and was therefore timely.

■ Second, CRI alleges that the citations are so vague as to violate due process and must therefore be dismissed. We do not agree. Each citation spells out the nature of the violations and the dates on which they allegedly occurred. Where a citation informs the licensee as to the type and date of the alleged violation, it comports with due process. *Pennsylvania Liquor Control Board v. Reda,* 76 Pa.Commonwealth Ct. 76, 463 A.2d 108 (1983).

■ Third, CRI alleges that the PLCB violated Section 471 of the Code in not holding timely hearings on Citation Nos. 86–2078 and 86–3331. Section 471's requirement that a hearing be held within sixty days of the PLCB's issuance of a citation is merely directory. *Pennsylvania Liquor Control Board v. Civic Arena Corp.,* 117 Pa.Commonwealth Ct. 75, 543 A.2d 207 (1988), *petition for allowance of appeal granted,* 521 Pa. 631, 558 A.2d 533 (1989); *Faber v. Pennsylvania Liquor Control Board,* 9 Pa.Commonwealth Ct. 549, 309 A.2d 65 (1973); *Pennsylvania Liquor Control Board v. Silva,* 219 Pa.Superior Ct. 31, 275 A.2d 871 (1971).

■ Last, CRI alleges that the PLCB's commingling of its adjudicatory and prosecutory functions violates due process. We agree with the trial court that its *de novo* review cured any prior due process problems. *See Locy v. Pennsylvania Liquor Control Board,* 125 Pa.Commonwealth Ct. 481, 557 A.2d 1164, *petition for allowance of appeal denied,* 522 Pa. 621, 563 A.2d 889 (1989).

## V. Conclusion

In conclusion, we find as follows:

Citation No. 84–1889 should be affirmed as to averments 2, 4, and 5, and reversed as to the following dates listed in averment 1: October 3, 1983; May 3, 5, 6, 19, 20, July 11, 12, 15, 18, 19, 20, 21, 22, 29, 1984. Citation No. 86–2078 should be affirmed as to averment 2, reversed as to averment 3 and reversed as to the following dates listed in averment 1: March 22, 23, 27, 28, April 12, 13, 1986. Citation No. 86–3331 should be reversed.

According to *Adair*, the trial court is the only body that may amend or modify a PLCB-ordered suspension. Thus, the three suspensions are hereby remanded to the trial court with directions to review them and determine whether, in light of reversals of a number of the violations, including all of Citation No. 86–3331, a modification is in order.

PELLEGRINI, J., joins in Parts I, III and IV, and concurs in the result only in Part II.

## ORDER

AND NOW, this 19th day of July, 1990, the order of the Court of Common Pleas of Delaware County in the above-captioned matters is affirmed in part and reversed in part. The case is remanded to that court for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.