621 A.2d 1097

**MARITIME MANAGEMENT, INC., Petitioner,**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1992.

Decided Feb. 8, 1993.

Timothy B. Fisher, for petitioner.

Michael L. Plumley, Asst. Counsel, for respondent.

Richard B. Henry, for intervenors, Paupack Township, Wayne Co., Pa.

Before COLINS and PELLEGRINI, JJ., and BLATT, Senior Judge.

BLATT, Senior Judge.

Maritime Management, Inc. (Maritime) appeals an order of the Pennsylvania Liquor Control Board (PLCB) which refused Maritime's application for a liquor license. Maritime applied for a license pursuant to Section 408 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–408 (Supp.1992–93). We reverse and order the PLCB to grant Maritime the license it has been seeking.

Maritime is the corporate owner of a motorized vessel, the "Spirit of Paupack", which cruises the waters of Lake Wallenpaupack. The lake, which was created by Pennsylvania Power & Light (PP & L) over sixty years ago by the damming of the

Wallenpaupack River, the boundary between Pike County and Wayne County, is approximately thirteen miles long, has fifty-two miles of shoreline, and covers 5,700 acres. While PP & L owns the land immediately adjacent to the lake, the waters of the lake itself are policed by the Pennsylvania Fish and Boat Commission.

Maritime uses the vessel to conduct scenic cruises of the lake. Guy Harriott, the owner of Maritime, testified that the vessel could hold up to seventy-five people, plus a crew of four. In 1989, Harriott obtained a permit from the Commonwealth's Department of Environmental Resources (DER) to serve dinners aboard the vessel. Harriott testified that the DER performed a regular restaurant inspection and required certain changes be made before the permit was issued. In response to DER concerns with sewage disposal, Maritime devised a satisfactory system as evidenced by the grant of the permit.

Because Maritime wanted to serve liquor on the cruises, it applied for a public service license under Section 408. A hearing was held before a hearing examiner on January 29, 1990. David Allen, a supervising investigator for the PLCB, who investigated Maritime's application, testified first. He described the vessel and explained that it contained two decks, each of which would have tables and chairs when food was being served. He also testified that Maritime was financially responsible and that Harriott was a reputable person. Ralph B. Vosberg testified in opposition to the grant of the license. Vosberg, an employee of PP & L, was the operations assistant and acting lake supervisor at Lake Wallenpaupack. Vosberg testified that PP & L rules prohibited alcohol on its own property. He stated that he had a number of conversations with individuals who were opposed to the grant of a liquor license to Maritime and that because of this sentiment against the grant of the license, PP & L was likewise opposed. Also testifying in opposition was Paul Buehler, a township supervisor of Palmyra Township. His opposition was based upon (1) environmental concerns because of the toilets on the boat, (2) a concern that granting the license would set a dangerous

precedent and allow numerous other people to seek such a license, (3) the difficulty in policing the lake and (4) unfair competition to other establishments serving liquor because Maritime did not have to pay any property taxes.[1]  The final witness to testify in opposition was Dr. William Dewar, the president of an association representing owners of property near the lake.  He stated that his organization would have no problem if liquor was served only to patrons of the vessel while it was cruising on the lake.  Rather, the association was concerned with sales off of the vessel.  Harriott testified for Maritime, stating that he planned to serve only dinner patrons on the vessel.  He also testified that sewage from the vessel was pumped into a raft moored at one of Maritime's boat slips; once full, the sewage was disposed of by a local sewage disposal system in the same manner used with portable toilets. As noted above, this system was approved by the DER.

Following the hearing, the hearing examiner issued a report in which he concluded that the application for a liquor license should be refused.  In that report, he merely summarized all of the testimony.  The hearing examiner then stated that he was refusing the license because of the protests described above.  Maritime appealed the decision to the PLCB.  In explaining its decision to affirm the refusal of the license, the PLCB stated:

> The Board, after giving careful consideration to all of the facts established at the hearing, is of the opinion that the granting of this license would adversely impact on the neighboring communities and that in the reasonable exercise of the discretion authorized by Section 408(b) of the Liquor Code, the said application for new public service liquor license should be refused.

(Opinion of PLCB, 3/30/90).

Maritime then appealed to this Court.  Paupack Township, which intervened, filed a motion to quash the appeal.  We granted that motion, relying upon Section 408(b) of the Liquor

1.  On cross-examination, Buehler testified that one of his fellow township supervisors owned a restaurant that served liquor and was located near the lake.

Code, which provides in pertinent part, "The board may, in its discretion, grant or refuse the license applied for and there shall be no appeal from its decision, except that an action of mandamus may be brought against the board in the manner provided by law." 47 P.S. § 4-408(b) (Supp.1992–93). Maritime sought discretionary review from the Supreme Court which was granted. That court reversed our order quashing the appeal, explaining that, while there was no appeal pursuant to the Liquor Code, Maritime had a right of appeal pursuant to Sections 701 and 702 of the Administrative Agency Law, 2 Pa.C.S. §§ 701, 702; *Maritime Management, Inc. v. Pennsylvania Liquor Control Board,* 531 Pa. 95, 611 A.2d 202 (1992). The Supreme Court remanded the matter to us to consider the merits of Maritime's appeal. *Id.*[2]

Maritime makes three allegations of error, arguing (1) that the PLCB does not have the discretion to refuse its application for a license solely because of an adverse effect on neighboring communities, (2) that there is no evidence in the record capable of supporting factual findings which allow a conclusion concerning such adverse impact and (3) in any event, a remand is required for factual findings which would allow effective appellate review of the first two questions. While we agree that the hearing examiner and the PLCB did not make findings of fact in a proper manner, we see no need for a remand because there is no evidence in this record which would allow the PLCB to refuse this license.

██  Our scope of review in this case is limited to determining whether the PLCB abused its discretion in denying Maritime's application for a license. It has long been settled that the exercise of discretion by the PLCB is subject to judicial review. *William E. Burrell v. Pennsylvania Liquor Control Board,* 172 Pa.Superior Ct. 346, 94 A.2d 110 (1953). Furthermore, a court's conclusion that the PLCB abused its discretion

2. Under 42 Pa.C.S. § 933(a)(1)(v), appeals under the Liquor Code from determinations of the PLCB go to the various courts of common pleas. Where, however, a party is aggrieved by a determination of the PLCB, yet cannot appeal under the Liquor Code, that appeal comes to us pursuant to 42 Pa.C.S. § 763; *In re Family Style Restaurant, Inc.,* 503 Pa. 109, 468 A.2d 1088 (1983).

does not involve an impermissible substitution of the court's discretion for that of the PLCB. *Hotchkiss Liquor License Case*, 169 Pa.Superior Ct. 506, 83 A.2d 398 (1951). In this case, we are compelled to conclude that the PLCB abused its discretion in refusing to issue a license to Maritime.[3]

The standard for granting the license sought by Maritime is set forth in Section 408 of the Liquor Code, which provides that:

[T]he Board, upon application ... may issue retail liquor licenses to steamship companies permitting liquor or malt or brewed beverages to be sold in the dining compartments of steamships or vessels whenever operated in the Commonwealth, except when standing or moored in stations, terminals or docks within a municipality wherein sales of liquor for consumption on the premises are prohibited. . . .

47 P.S. § 4-408(a). That section further provides:

For the purpose of considering an application by a steamship company for a liquor license, the board may cause an inspection of the steamship or vessel for which a license is desired. The board, may in its discretion, grant or refuse the license applied for and there shall be no appeal from its decision, except that an action of mandamus may be brought against the board in the manner provided by law.

47 P.S. § 4-408(b).

In *Obradovich Liquor License Case*, 386 Pa. 342, 126 A.2d 435 (1956), Obradovich applied for the transfer to him of a restaurant liquor license owned by another. Despite a finding

3. In *Beach Lake United Methodist Church v. Liquor Control Board*, 126 Pa.Commonwealth Ct. 71, 558 A.2d 611 (1989), we held that the Supreme Court's decision in *Adair v. Liquor Control Board*, 519 Pa. 103, 546 A.2d 19 (1988), did not apply in license application cases and that the PLCB's exercise of its discretion was subject to appellate review. We must note that a crucial distinction exists between *Beach Lake* and the present case. In the former, the appeal was taken pursuant to Section 464 of the Liquor Code; it is that section which sets forth the applicable scope of review of the trial court. *Id.* In the present case, however, the appeal is not taken pursuant to the Liquor Code; rather, it is taken under the Administrative Agency Law and comes directly to this Court. Furthermore, unlike appeals under the Liquor Code to the court of common pleas where the court is permitted to take evidence, there is no statute which permits us to receive additional evidence.

that Obradovich was a reputable person and that the proposed establishment met all requirements set forth by law, both the PLCB, and the trial court, following a hearing de novo, refused the transfer because:

> [T]he objections of the neighbors were entitled to consideration, that the transfer of the license would threaten the quiet character of the neighborhood, and that the restaurant in its new location would be passed by children attending school (the school itself was more than 300 feet away), and this would have derogatory effects on them.

*Id.* at 344, 126 A.2d at 436. The court held that the PLCB had abused its discretion in refusing the license on the basis stated because Section 404 of the Liquor Code did not then mention a "threat to the quiet character of the neighborhood" as grounds for refusing the license. As the court stated, "A license may not be refused on grounds not embraced in the statute." *Id.* at 346, 126 A.2d at 437.

In this case, an employee for the PLCB testified that Maritime was a financially responsible entity and that Guy Harritt, Maritime's principal, was a reputable person. The employee also testified that he conducted an inspection of the vessel and did not mention any problems with regard to the inspection. Our review of Section 408 of the Liquor Code reveals no other grounds upon which the license could be refused.

Most of the testimony of the protestants falls within the purview of that found insufficient in *Obradovich*, i.e., general concerns that would apply to the grant of any liquor license. Nevertheless, we believe that some of that testimony merits further discussion. The Palmyra Township supervisor expressed environmental concerns with regard to the disposal of waste generated on the vessel. Suffice it to say, this is a concern of DER, and not the PLCB. Furthermore, DER issued a license to Maritime to operate a public eating and drinking place on the vessel. Similarly, the supervisor testified about the problems with policing Lake Wallenpaupack. If Palmyra Township were responsible for policing the lake, such concerns could be considered; however, it is the responsibility

of the Pennsylvania Fish and Boat Commission. No one from the Fish and Boat Commission testified in opposition to the grant of the license. Finally, the supervisor testified concerning unfair competition in that Maritime did not have to pay real estate taxes while competitors near the lake were responsible for such taxes. We need say no more than the Legislature has authorized the issuance of liquor licenses for steamships and vessels which likewise would not pay real estate taxes.

Having reviewed the entire record of these proceedings, we can find no evidence, even if believed by the fact finder, that would allow the PLCB to deny Maritime's application for a liquor license under Section 408 of the Liquor Code. Accordingly, we must conclude that the PLCB abused its discretion in refusing to issue the license.

### ORDER

AND NOW, this the 8th day of February, 1993, the order of the Pennsylvania Liquor Control Board, dated March 30, 1990, at LCB No. 89–9168, is reversed and the Pennsylvania Liquor Control Board is directed to issue a public service liquor license to Maritime Management, Inc.